[No. 12964-7-II.   Division Two.   November 4, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH JOHN TIGANO, *Appellant*.

*Monte E. Hester, Wayne C. Fricke* and *Law Offices of Monte E. Hester, Inc., P.S.,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Kitty Ann VanDoorninck, Deputy,* for respondent.

MORGAN, J. — Joseph Tigano was acquitted of aggravated murder in the first degree, but convicted of first degree murder and conspiracy to commit first degree murder. He appeals; we affirm.

Joseph Tigano and Yvonne Wood were lovers who conspired to kill Yvonne's husband, Richard Wood. Tigano approached Shane Kretsinger, telling him that Yvonne would pay $15,000 to have Richard killed. The money was to come from the proceeds of insurance on Richard's life.

Tigano and Kretsinger then discussed the matter with Robert Poli. Kretsinger and Poli plotted the murder for several days but ultimately withdrew from the plan.

On the night of May 20, 1987, Yvonne Wood called Tigano at the Army barracks where he lived. Tigano left the barracks, returning between 1 and 2 a.m. The next morning, he told Kretsinger and Poli that he had gone into Yvonne Wood's home through the back door, which she had left open; that he knocked something over in the living room; that he shot Richard Wood when the latter came to investigate; and that he threw away the gun.

By amended information, Tigano and Yvonne Wood were charged with aggravated first degree murder and conspiracy to commit first degree murder. Their trials were severed. Yvonne Wood was convicted and sentenced to 46 years in prison. Tigano's first trial resulted in a mistrial due to the jury's inability to reach a unanimous verdict. His second trial, the one in issue here, lasted about 2 weeks. It resulted in verdicts of not guilty of aggravated first degree murder, guilty of first degree murder, and guilty of conspiracy to commit first degree murder. Tigano was sentenced within the standard range.

On appeal, Tigano makes seven contentions. The first two warrant discussion. The last five obviously lack merit, and only summary discussion is needed.

JURY MISCONDUCT

After trial but before sentencing, Tigano made a motion for new trial based on jury misconduct. The trial court denied the motion, and Tigano assigns error to that ruling.

At the beginning of the trial, the judge gave a brief explanation of the case that included, among other things, the State's allegation that Yvonne Wood and Tigano had together murdered Richard Wood. Soon thereafter, the judge asked the venire whether any of them had heard about the case. Ten people responded, but a woman named Baker did not.

Also at the beginning of the trial, the judge orally instructed the jurors not to read any newspaper or listen to any radio report on the subject of the trial. He further instructed them not to discuss the case with anyone, includ-

ing each other, until after it was submitted for deliberations.

During the trial, neither the parties nor the court informed the jury of Wood's sentence or Tigano's previous trial. At the end of the trial, just after the verdicts had been received and as the prosecutor was walking out of court, she was approached by a juror named Hanson. He asked her a variety of questions about the legal process and, in the course of doing that, disclosed that he and others on the jury had known before verdict that Yvonne Wood had been sentenced to prison for 46 years. In addition, he disclosed that he had heard on the radio that Tigano had had a previous trial, although he said that he had also deduced that fact from all the transcripts on counsel's desks.

As soon as practicable, the prosecutor advised the trial court and defense counsel of what Hanson had said concerning the jurors' knowledge of Wood's sentence. The trial judge convened a posttrial hearing at which all 12 jurors testified. Hanson testified that he had read of Wood's sentence in a newspaper article on Saturday between the first and second weeks of trial, and also that he had heard juror Baker mention it, apparently at some time before deliberations commenced. Baker testified that she had read of it in the newspaper on the day voir dire started, or perhaps on the day before. She also volunteered that before voir dire she had known that Tigano had had a previous trial. Juror DeBolt testified that he thought Hanson had mentioned Wood's sentence to him 3 or 4 days prior to deliberations. Four other jurors testified that someone had mentioned Wood's sentence during deliberations,[1] but every juror who was asked agreed that the subject had been immediately

---

[1] It appears that Hanson may have been the one to broach the matter during deliberations. He testified: "It was brought up, it seems, to me at some point in time in the jury room and somebody, I don't know, brought up by whom, I might have brought it up myself, I can't remember specifically, but somebody else said that we are not to allow anything we may have heard about any members of a previous trial or the trial itself or pieces of information regarding that trial to be a part of our considerations now or not to talk about that, and so it was dropped."

dropped without further discussion.[2] The remaining five jurors had no knowledge of Wood's sentence or of Tigano's first trial until after the verdicts had been returned.

The defense moved for new trial due to jury misconduct. The trial judge denied the motion. With respect to the information about Wood's sentence, the judge commented:

> [W]e have a situation where it has been disclosed after the jury reached a verdict that some jurors had knowledge that Yvonne Wood had been sentenced for in excess of 40 years for her involvement in this matter. . . . [T]hroughout the course of the trial both the plaintiff and the defendants continually portrayed Yvonne Wood as the major culprit. And although there was certainly argument and evidence with regard to Mr. Tigano's participation, there was . . . no question but both sides specifically argued and presented evidence to the effect . . . that Yvonne Wood was in fact involved.

He concluded that the information about Wood's sentence added nothing significant to what the jurors were told in open court by both sides, and that it could not have prejudiced Tigano's right to a fair jury trial.

With respect to knowledge about Tigano's first trial, the trial judge commented:

> All that tells her [Baker] is the State had been unable to meet its burden of proof or that the Court had dismissed the case. There isn't anything to suggest that some earlier tribunal found Mr. Tigano guilty of any of the offenses that he was on trial for before Mrs. Baker and the other jurors.

He again concluded that the information was insignificant, and that it could not have prejudiced Tigano's right to a fair jury trial.

On appeal, defendant makes three arguments on jury misconduct. First, he argues that his right to fair trial, impartial jury, or both was prejudiced by seven jurors' knowledge of Wood's sentence, and by Hanson's and Baker's knowledge that he had been tried before. Second, he argues that his right to challenge Baker for cause was prejudiced

---

[2] For example, the foreman testified: "[E]verybody was talking at once and as soon as I heard that [mention of Wood's sentence], I tabled it right there. I said this is not for discussion."

by her failure to disclose her knowledge about the case during voir dire. Third, he argues that his right to peremptorily challenge Baker was also prejudiced by her failure to disclose.

Article 1, section 21 of the Washington Constitution provides that "[t]he right of trial by jury shall remain inviolate . . . ". The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct. *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 159, 776 P.2d 676 (1989); *Smith v. Kent*, 11 Wn. App. 439, 443, 523 P.2d 446, *review denied*, 84 Wn.2d 1007 (1974).

■ ■ It is misconduct for a juror to fail to disclose material information when asked (*Robinson v. Safeway Stores, Inc.*, 113 Wn.2d at 159; *State v. Briggs*, 55 Wn. App. 44, 50, 776 P.2d 1347 (1989); *Smith v. Kent*, 11 Wn. App. at 444); to extrajudicially acquire case-specific information during the course of the trial, especially where the judge, as here, has given an instruction expressly prohibiting that; and to inject into deliberations extraneous, case-specific information learned outside of the trial. *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 270, 796 P.2d 737 (1990), *review denied*, 116 Wn.2d 1014 (1991); *State v. Briggs*, 55 Wn. App. at 54. However, not all instances of jury misconduct warrant a new trial. Those causing prejudice do; those not causing prejudice do not. *State v. Lemieux*, 75 Wn.2d 89, 91, 448 P.2d 943 (1968); *State v. Briggs*, 55 Wn. App. at 55; *State v. Rempel*, 53 Wn. App. 799, 801, 770 P.2d 1058 (1989), *rev'd on other grounds*, 114 Wn.2d 77, 785 P.2d 1134 (1990).

■ ■ When asking whether prejudice occurred, the inquiry is objective rather than subjective. *State v. Briggs*, 55 Wn. App. at 55. The question is whether the unrevealed or extraneous information could have affected the jury's determinations, not whether it actually did. *State v. Briggs*, 55 Wn. App. at 55; *Gardner v. Malone*, 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 918 (1962); *see Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. at 270. Whether it actually

did is a matter that inheres in the verdict and thus may not be delved into. *Gardner v. Malone*, 60 Wn.2d at 841; *State v. Briggs*, 55 Wn. App. at 55. Information known during voir dire but not revealed upon request will be prejudicial if it is material and would have provided the objective basis needed to challenge for cause; it will not be prejudicial if no more is shown than that it might have affected how a party subjectively decided to exercise peremptory challenges. *State v. Carlson*, 61 Wn. App. 865, 878, 812 P.2d 536 (1991); *State v. Briggs*, 55 Wn. App. at 52; *see McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 78 L. Ed. 2d 663, 104 S. Ct. 845 (1984). The rules regarding disclosure during voir dire appear to be but a specific application of the general principle that prejudice must be objectively rather than subjectively discernible.

To assess whether prejudice has occurred, it is necessary to compare the particular misconduct with all of the facts and circumstances of the trial. As a neutral, trained person observing both the verbal and nonverbal features of the trial, the trial judge is in the best position to make this comparison. *See State v. Harvey*, 34 Wn. App. 737, 744, 664 P.2d 1281, *review denied*, 100 Wn.2d 1008 (1983). Not surprisingly, then, whether to grant a motion for mistrial is a matter addressed to the sound discretion of the trial court, and that court's decision will be overturned on appeal only for an abuse of discretion. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. at 556; *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. at 271; *State v. Briggs*, 55 Wn. App. at 60; *State v. Rempel*, 53 Wn. App. at 801; *State v. Hicks*, 41 Wn. App. 303, 314, 704 P.2d 1206 (1985).

In this case, either two or three jurors engaged in misconduct. Baker failed to respond to the court's voir dire question asking whether anyone had heard anything about the case.[3] Hanson read a newspaper article on Yvonne Wood

---

[3]In fairness to Baker, the trial judge expressed some uncertainty about whether she was correctly recollecting that she had seen an article about Wood on the day voir dire started, or on the day before. Apparently, there was no such article on either day. There was an article a week earlier, and another a week later.

midway through the trial and at about the same time listened to a radio report that mentioned Tigano's first trial. He may also have commented on Wood's sentence to DeBolt while the trial was in progress. Either Hanson or a third person injected Wood's 46-year sentence into deliberations.

Although perhaps deserving of censure, these acts of misconduct could not have affected the jury's deliberations. As the trial judge pointed out, both the defendant and the State actively argued throughout the trial that Wood had participated in the murder. Thus, the fact that she had been convicted and sentenced to 46 years was consistent with, not harmful to, the defendant's trial posture. As the trial judge also pointed out, knowledge of Tigano's first trial was not accompanied by any knowledge concerning its outcome — indeed, there had been no outcome in the sense of a determination of guilt or innocence — and consequently such knowledge indicated nothing about Tigano's guilt or innocence. Moreover, at various points in the trial, counsel for both sides referred witnesses to transcripts of their testimony from previous "hearings", and at least according to juror Hanson, transcripts were left on counsel's desks in such a way as to show that there had been a previous trial. Under these circumstances, the trial court did not abuse its discretion when it ruled that the acts of misconduct were not prejudicial.

For similar reasons, full and correct responses by juror Baker at the time of voir dire would not have supported a challenge for cause. If she had been challenged for cause during voir dire, it would have come out during argument on the challenge that both sides were going to argue Wood's participation, so the trial judge would have been within his discretion to decline to excuse her. *See State v. Carlson*, 61 Wn. App. at 878; *State v. Briggs*, 55 Wn. App. at 52; *see also McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. at 556. It would also have been brought out that her knowledge of a previous trial did not include knowledge of its result, so again the trial judge would have been within his discretion to decline to excuse her. *McDonough Power*

*Equip., Inc. v. Greenwood, supra.* Thus, the trial court did not abuse its discretion when it ruled that Baker's failure to disclose did not prejudice Tigano's right to exercise challenges for cause.

Finally, whatever impact Baker's failure to disclose may have had on Tigano's exercise of peremptory challenges was not prejudicial as a matter of law. Jury misconduct not prejudicial to the right to fair trial or the right to exercise challenges for cause does not warrant a new trial merely because it may have affected the subjective thought process used by counsel in determining whether and how to exercise peremptory challenges. *State v. Carlson*, 61 Wn. App. at 878; *State v. Briggs*, 55 Wn. App. at 52; *see McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. at 556.

### DRUG USE BY WITNESS

Tigano contends that he should have been allowed to impeach Poli's veracity with evidence of his drug use. He bases the contention on Poli's general drug use over a period of years, and on an affidavit submitted by defense counsel. In the affidavit, defense counsel stated that he had been told by Poli that Poli had "used LSD at about the time of the shooting of Richard Wood."

■ For evidence of drug use to be admissible to impeach, there must be a reasonable inference that the witness was under the influence of drugs either at the time of the events in question, or at the time of testifying at trial.[4] *State v. Brown*, 48 Wn. App. 654, 658, 739 P.2d 1199 (1987) (citing 2 C. Torcia, *Wharton on Criminal Evidence* § 459, at 398 (13th ed. 1972)); *State v. Hall*, 46 Wn. App. 689, 692, 732 P.2d 524, *review denied*, 108 Wn.2d 1004 (1987); *see also* E. Cleary, *McCormick on Evidence* § 45 (3d ed. 1984); 5A K. Tegland, Wash. Prac., *Evidence Law and Practice* § 226(4) (3d ed. 1989). Evidence of drug use on other occasions, or of

---

[4]Although defendant argues to the contrary, *State v. Brown*, 48 Wn. App. 654, 659-60, 739 P.2d 1199 (1987) does not alter this rule. It merely holds that if there is evidence of drug use at the time of the crime or trial, expert testimony is admissible to explain the effects of that use on the witness's perception.

drug addiction, is generally inadmissible on the ground that it is impermissibly prejudicial. *State v. Renneberg*, 83 Wn.2d 735, 737, 522 P.2d 835 (1974).

In the case at bar, there was no reasonable inference that Poli was under the influence of drugs at the time of the events he testified about, or at the time of trial. Poli did not testify about the shooting itself, since he was not there. Poli testified that he was not using drugs at the time of the events that he did testify about, and no one testified to any contrary observations. Defense counsel's affidavit does not show that Poli used drugs at a time when such use might have affected his ability to perceive, because drug use "at about the time of the shooting" might have been a week, a month, or any other time before or after the events in question.

Tigano further contends that he should have been allowed to present expert testimony that Poli's general pattern of drug use could have affected his perception of the events about which he testified. Whether or not such testimony might have been permissible if there had been evidence of drug use by Poli at the time of the events or the time of trial, *State v. Brown, supra*, it was impermissibly prejudicial absent such evidence, *see State v. Renneberg*, 83 Wn.2d at 737, and the trial judge did not err by excluding it.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WORSWICK, C.J., and ALEXANDER, J., concur.

Review denied at 118 Wn.2d 1021 (1992).