FILED
COURT OF APPEALS
DIVISION II
2013 JUN 19 AM 8: 32
STATE OF WASHINGTON
BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41885-1-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| DENNIS McDANIEL, | |
| Appellant. | |

BJORGEN, J. — Dennis McDaniel appeals his jury conviction for one count of first degree child molestation. McDaniel argues that the trial court erroneously: (1) permitted the forensic child interviewer to give opinion testimony, (2) excluded lifestyle evidence of the victim's mother, and (3) granted eight continuances over McDaniel's objections. He argues also that the prosecutor's closing argument reference to the victim's bedwetting constituted misconduct. In his statement of additional grounds for review (SAG),[1] McDaniel further asserts that (1) the information failed to include a proper date; (2) the State improperly amended the information after resting its case; (3) his conviction based on a second count violated double jeopardy protections; and (4) his counsel was ineffective because (a) he did not challenge the specificity of the charging document, (b) he did not object to the amended charges, (c) he did not object to continuances despite his client's wishes, (d) he did not ask for a mistrial or dismissal after the victim testified, and (e) he did not raise the issue of a defective second arraignment on the amended charges.

We affirm the conviction for the reasons below.

---

[1] RAP 10.10(a).

FACTS

## I. DISCLOSURES BY THE VICTIM

C.D.[2] lived half the time with her mother and half with her paternal grandmother. Her mother would frequently bring C.D. to Teresa Russell's house, where C.D. would often stay the night. McDaniel lived with Russell.

In early 2008,[3] her mother picked up C.D., who was then three years old, from an overnight stay at Russell's home. C.D. told her mother that McDaniel had put hand sanitizer on his hands and "touched her private." Report of Proceedings (RP) at 143. Shortly thereafter, C.D.'s mother told McDaniel about this disclosure and informed him that she was going to call the police. Her mother did not contact the police right away, however, because she felt this was a serious allegation. McDaniel was shocked at the claim and denied the alleged contact. C.D. did not see McDaniel again.

In June 2009, C.D. repeated the disclosure to her mother, again that McDaniel had put hand sanitizer on his hands and touched "her private." RP at 145. Her mother called the police. At about the same time, C.D. made the same disclosure to her grandmother, her half sister S.D., and S.D.'s Big Sister mentor, Elizabeth Wendell. The grandmother and Wendell immediately contacted Child Protective Services (CPS).

In July 2009, Rebecca Wiester, an attending physician at Harborview Sexual Assault Center, interviewed C.D. C.D. told Dr. Wiester that McDaniel had "got on" her "private." RP at 634. That summer, C.D. also told a therapist, Cassandra Ellsworth at Kent Youth and Family

---

[2] We use initials to protect the privacy interests of child witnesses in sex crime cases.

[3] The timeframe is approximate. The parties generally refer to this time as being in February 2008. The charging period in the information is from November 2007 through February 2008.

Services, that McDaniel had touched her "privates" three times and pointed to her vagina. RP at 526, 533. C.D. was also interviewed by Cornelia Thomas, a forensic child interviewer at the Children's Advocacy Center in Kent.

## II. PROCEDURE

On December 30, 2009, the State arraigned McDaniel on a charge of one count of first degree child rape.[4] On June 15, 2010, the State amended the information, charging McDaniel also with first degree child molestation.[5]

Trial was first set for February 24, 2010. On January 15, McDaniel requested a 106-day continuance until June 10, because he needed additional time to prepare. On June 10, both parties requested a 39-day continuance until July 19, because the State received new discovery and needed to conduct interviews. On July 19, the State requested a 52-day continuance until September 9, because two of its material witnesses were unavailable before that time. On September 3, both parties requested a 54-day continuance until November 2, because McDaniel needed to conduct interviews. On November 2, both parties requested a 30-day continuance until December 2, because the trial court had another case, McDaniel's counsel had vacation, and the State needed to prepare transcripts. On December 2, McDaniel requested a 35-day continuance until January 6, 2011, because McDaniel's counsel was in trial for another case. On January 6, the trial court continued the matter until January 13, because it had a conflicting case. Of these seven continuances, McDaniel's counsel requested or jointly requested all but two and the court granted all of them. McDaniel himself refused to sign off on all continuances, except that granted on January 15, 2010.

---

[4] RCW 9A.44.073.

[5] RCW 9A.44.083.

The trial started on January 13, 2011. McDaniel, in his personal capacity, moved to dismiss for violation of the rule governing the time for trial. The trial court found that good cause supported each continuance and denied the motion.

On January 25, it came to light that the State had never re-arraigned McDaniel on the child molestation charge that had been added to the information on June 15, 2010. The court arraigned McDaniel on the molestation charge on January 25, and McDaniel pleaded not guilty. Based on the wishes of his client, McDaniel's counsel objected to the re-arraignment as untimely. Counsel also told the court that he had received a copy of the amended information the previous June, that he had made his client aware of the amended charges that month, and that he was well aware the State was proceeding on both counts.

On January 31, in conjunction with resting its case, the State filed a second amended information, striking the phrase "not in a state-registered domestic partnership with the defendant," because that element had been added to the statute after the time period for McDaniel's charges. Clerk's Papers (CP) at 109-10. McDaniel agreed to the second amended information, and the court re-arraigned him.

The jury found McDaniel not guilty of first degree child rape and guilty of first degree child molestation. The court sentenced McDaniel to 160 months to life in prison.

## ANALYSIS

### I. OPINION TESTIMONY

McDaniel first argues that Thomas, the forensic child interviewer, gave impermissible opinion testimony about C.D.'s veracity by discussing the "truth/lie" exercise in the interview. Br. of Appellant at 11-12. We disagree because Thomas merely testified about her interview protocols and her testimony did not offer an opinion of C.D.'s veracity.

4

We will not reverse a trial court's decision to admit or exclude evidence unless the appellant can establish that the trial court abused its discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). A trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court. *Demery*, 144 Wn.2d at 758. Where reasonable persons could take differing views regarding the propriety of the trial court's actions, the trial court has not abused its discretion. *Demery*, 144 Wn.2d at 758.

Generally, no witness may offer opinion testimony regarding the defendant's guilt or veracity. *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009). Such testimony is deemed unfairly prejudicial to the defendant, because it invades the exclusive province of the jury. *King*, 167 Wn.2d at 331. To determine whether statements are impermissible opinion testimony, a court will consider "'(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *King*, 167 Wn.2d at 332-33 (quoting *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007)). We proceed with this inquiry.

McDaniel argues that Thomas's testimony about the child forensic interview process "had the effect of impliedly endorsing the veracity of C.D.'s allegations." Reply Br. of Appellant at 7. McDaniel states that Thomas "essentially testified that her truth/lie discussion aids her to ferret out when children are being truthful and when they are not." Br. of Appellant at 15-16. Thomas, however, gave no such testimony. Instead, she stated that "[i]t's really important that the child understands the difference between truth and lie and what's right or wrong." Report of Proceedings (RP) at 570. She explained that the exercise helped her to identify children who thought it was better to lie than to tell the truth when an adult had instructed them to lie.

5

Thomas's testimony gave general information about child forensic interview protocols and guidelines, based on her extensive experience. Thomas did not reiterate C.D.'s testimony, she did not explain how that testimony was consistent with C.D.'s having suffered child molestation, and she refrained from stating or implying that C.D. had been a victim of child molestation. The State never asked about, nor did Thomas opine on, C.D.'s veracity. Instead, Thomas's testimony consisted of objective observations, such as deeming C.D. to be a "strong willed little girl" who was not afraid to ask questions or to let Thomas know when she was done talking, or noting that C.D. "tracked questions, for the most part, very well for her age." RP at 575. Thomas's testimony gave context to C.D.'s interview and was likely helpful to the jury in evaluating for themselves the weight to give to C.D.'s forensic interview disclosures.

McDaniel's reliance on *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987), *State v. Johnson*, 152 Wn. App. 924, 930-31, 219 P.3d 958 (2009), and *State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992) is not persuasive. In each of these cases, unlike here, the witness gave an opinion on the credibility of either the victim or the defendant. In *Black*, the expert testified, "There is a specific profile for rape victims and [the victim] fits i[t]." *Black*, 109 Wn.2d at 339. In *Johnson*, the trial court admitted nonexpert testimony from the defendant's wife, conveying her belief that the victim told the truth. *Johnson*, 152 Wn. App. at 929-30. In *Alexander*, a counselor testified that he believed the victim was not lying. *Alexander*, 64 Wn. App. at 154.

Here, Thomas's testimony commented on neither McDaniel's guilt nor on C.D.'s veracity. Instead, she described the child forensic interview protocols and guidelines she follows and drew some conclusions about C.D. not touching on veracity. The trial court did not abuse its discretion in admitting Thomas's testimony.

## II. EXCLUDED EVIDENCE

McDaniel next argues that the trial court erroneously excluded evidence about the mother's lifestyle and that it did so using the wrong legal standard. We agree with the State that the trial court properly excluded this highly prejudicial evidence of little, if any, relevance.

At trial, McDaniel sought to admit evidence that in the time leading up to C.D.'s disclosure, her mother used heroin and other drugs and worked at a strip club. McDaniel argued that because C.D.'s mother exposed her daughter to that lifestyle, she may have also exposed her to potential perpetrators, pornography, or inappropriate television programs. McDaniel also sought to admit evidence that CPS investigated C.D.'s mother during the charging period. McDaniel argued that the mother's lifestyle was relevant to why C.D. would tell the story she did.

The trial court held that evidence of C.D.'s mother's strip club employment and heroin addiction was relevant only if there was evidence that these activities affected her memory or exposed C.D. to sex offenders, pornography, or inappropriate television programs. Without that evidence, the court deemed this an irrelevant attack on the mother. The trial court "likened" evidence of her lifestyle to inadmissible victim sexual history evidence under the rape shield statute, but did not rely on that statute as a basis for its ruling. RCW 9A.44.020(2). The court also excluded evidence of CPS's investigation of the mother unless there was an offer of proof showing its relevance.

Questions of the admissibility of testimonial evidence, relevancy, and limitations on cross-examination are within the trial court's discretion, and we review them only for manifest abuse of discretion. *State v. Aguirre*, 168 Wn.2d 350, 361, 229 P.3d 669 (2010). To be relevant, evidence must have a tendency to prove or disprove a fact (probative value), which is of

consequence in the context of the other facts and the applicable substantive law (materiality). *State v. Rice*, 48 Wn. App. 7, 12, 737 P.2d 726 (1987); ER 401, 402. The evidence's relevancy will depend upon the circumstances and the relationship of the facts to the ultimate issue. *Rice*, 48 Wn. App. at 12. In addition, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." ER 403.

Evidence of drug use is admissible for impeachment only where a reasonable inference exists that the individual was under the drug's influence either during the event or when testifying. *State v. Tigano*, 63 Wn. App. 336, 344, 818 P.2d 1369 (1991), *review denied*, 118 Wn.2d 1021 (1992). Evidence of drug use on other occasions, or of drug addiction, is generally inadmissible on the ground that it is impermissibly prejudicial. *Tigano*, 63 Wn. App. at 344-45 (citing *State v. Renneberg*, 83 Wn.2d 735, 737, 522 P.2d 835 (1974)). McDaniel sought to admit evidence of C.D.'s mother's drug addiction "leading up to the disclosure or to this alleged act," arguing that it was relevant because of the lifestyle she was leading. RP at 254. McDaniel further sought to admit evidence of her "current involvement in treatment," arguing that it was relevant because it corroborated the lifestyle that she was leading. RP at 257. This evidence does not go to impeachment and is prejudicial. Under *Tigano* and ER 401, 402 and 403, the court did not abuse its discretion in excluding it.

McDaniel argues that evidence of the mother's employment as a stripper is relevant because it meant that she kept unusual hours. Various occupations, though, involve working late or unusual hours; nothing about this circumstance is relevant to the alleged crime. McDaniel further argues that evidence that CPS commenced an investigation of C.D.'s mother is relevant because it gave her an incentive to be dishonest about McDaniel. McDaniel does not explain this

argument in his brief. At trial, he suggested that C.D.'s mother would be concerned that CPS would discover that McDaniel was a registered sex offender. This argument does not suggest a plausible incentive for why she would dishonestly report C.D.'s disclosure. On the contrary, fabricating a report about abuse of her daughter would only intensify CPS's scrutiny of her. We conclude that the trial court did not abuse its discretion when it excluded the mother's lifestyle.

### III. PROSECUTOR'S CONDUCT

McDaniel contends that the prosecutor's closing argument improperly attempted to persuade the jury that C.D.'s bedwetting was caused by McDaniel's alleged sexual touching. This was especially unfair, McDaniel argues, because he was denied the opportunity to present an alternative explanation for C.D.'s regression to bedwetting, specifically that her mother's drug use and work as a stripper caused the bedwetting. We disagree.

In closing argument, the prosecutor stated:

> Fully toilet trained and begins wetting the bed. C.J. Ellsworth was here and said, yes, it can be relevant in treating someone's mental health, can be part of anxiety, it's simply something noteworthy, less so obviously to the medical professionals.

RP at 797. McDaniel did not object to this statement.

Ellsworth, to whom the prosecutor's statement referred, had been asked on redirect if regressing to bedwetting can be an indicator of abuse. She replied, "It can. It is not always. It depends on the circumstances." RP at 541. The State then responded, "Sure. Right. I mean I'm assuming that there are children who regress to bedwetting where nothing has happened, correct?" RP at 541. Ellsworth replied in the affirmative. The State asked if the combination of behaviors (frozen affect, nervousness, loss of eye contact and bedwetting) raise more concerns about a trauma triggering the behaviors. Ellsworth replied, "Yes, combined with her disclosure." RP at 542. McDaniel did not object to this testimony.

McDaniel bears the burden of showing that (1) the State committed misconduct and (2) the misconduct had prejudicial effect. *State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010). If McDaniel establishes that the State made improper statements, then we review whether the improper statement prejudiced McDaniel. *State v Emery*, 174 Wn.2d 653, 741, 760, 278 P.3d 653 (2012). Because McDaniel did not object at trial, he must show that the State's misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. A prosecutor enjoys wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on the evidence. *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010).

Taken by itself, the prosecutor's statement "[f]ully toilet trained and begins wetting the bed" had the apparent intent and likely effect of suggesting that the bedwetting was evidence that the abuse occurred. RP at 797. As such, it would have not been supported by Ellsworth's testimony. The prosecutor immediately qualified this suggestion, though, by stating that "it can be relevant" in treating mental health, it "can be part of anxiety," and "it's simply something noteworthy." RP at 797. This is an accurate paraphrase of Ellsworth's testimony and does not convey the message that C.D.'s bedwetting had particular probative value. The prosecutor's statement approached a precipice, but then stepped back. Taken as a whole, the statement was not misconduct under the standards above.

## IV. TIME FOR TRIAL

McDaniel argues that the trial court granted a number of continuances over McDaniel's objections in violation of CrR 3.3[6] and, therefore, that we should dismiss his conviction. This argument fails.

As recounted in the above facts, the trial court granted seven continuances before trial began. McDaniel's counsel requested or jointly requested all but two. McDaniel himself refused to sign off on all continuances, except the one granted on January 15, 2010.

Under CrR 3.3(b), a defendant detained in jail must be brought to trial within 60 days after the "commencement date," which is usually the date of arraignment. The rule, however, excludes time granted for continuances from this 60-day limit. CrR 3.3(e)(3). If a period is excluded, then "the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period." CrR 3.3(b)(5).

The trial court may grant a continuance based on (1) written agreements of the parties or (2) when the continuance is required by the administration of justice and the continuance will not prejudice the defendant's presentation of his case. CrR 3.3(f). A motion for a continuance "by or on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2). The trial court does not necessarily abuse its discretion by granting defense counsel's request for more time to prepare for trial, even "'over defendant's objection, to ensure effective representation and a fair trial.'" *State v. Saunders*, 153 Wn. App. 209, 217, 220 P.3d 1238 (2009) (quoting *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984)).

The trial court must consider all relevant factors in exercising its discretion to grant or deny a continuance. *State v. Flinn*, 154 Wn.2d 193, 199-200, 110 P.3d 748 (2005) (quoting *State*

---

[6] Although McDaniel mentions his "right to a speedy trial," he bases his analysis on the court rule; thus, we respond to that argument. *See* Br. of Appellant at 30, 33.

*v. Heredia-Juarez*, 119 Wn. App. 150, 155, 79 P.3d 987 (2003)). Allowing counsel time to prepare for trial is a valid basis for continuance. *Flinn*, 154 Wn.2d at 200. Additionally, the trial court may consider schedule conflicts, including the prosecutor's reasonably scheduled vacation in granting continuances. *Flinn*, 154 Wn.2d at 200. The unavailability of a key witness is also a valid reason for a continuance. *State v. Iniguez*, 167 Wn.2d 273, 294, 217 P.3d 768 (2009).

As noted, McDaniel's counsel requested or jointly requested all but two of the continuances at issue. Under CrR 3.3(f)(2), McDaniel may only object to those two continuances. The first was the request by the State on July 19, 2010 for a 52-day continuance because two material, subpoenaed witnesses were unavailable. The unavailability of material witnesses is a valid reason for a continuance. *Iniguez*, 167 Wn.2d at 294. The trial court granted the continuance as required in the administration of justice under CrR 3.3(f)(2).

The second of these continuances was the court's January 6, 2011 request for a 7-day continuance because it was in another case. McDaniel argues that the trial court failed to make a record of why another court could not hear the matter. The prior continuance, however, had expired on January 6, 2011. Under CrR 3.3(b), the allowable time for trial cannot expire earlier than 30 days after the end of an excluded period. The trial began sooner than 30 days from January 6. Therefore, even if the final continuance was invalid, the trial began within the time required by CrR 3.3. Considering all continuances, McDaniel was brought to trial within the time CrR 3.3 required.

## V. Adequacy of the Information

McDaniel argues that the State improperly charged him because the information did not include a proper date, but instead referred to the alleged crime as occurring in "the period between November 2007 and February 2008." SAG at 4. A charging document is

constitutionally adequate only if all essential elements of a crime, statutory and nonstatutory, are included in the document to apprise the accused of the charges and to allow the defendant to prepare a defense. *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). Here, the information apprised McDaniel of the nature of the crime and the period within which it was alleged to have occurred. This did not hinder his ability to present a defense. Thus, McDaniel's claim fails.

## VI. AMENDED INFORMATION

McDaniel next argues that the State abused its authority by amending the charges against him on June 15, 2010, to add first degree child molestation after it had rested its case-in-chief. Under CrR 2.1(d), "[t]he court may permit any information . . . to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The defendant bears the burden of showing prejudice. *State v. Guttierrez*, 92 Wn. App. 343, 346, 961 P.2d 974 (1998). This case was not even called for trial until January 13, 2011. Thus, this amendment occurred well before the CrR 2.1(d) deadline. Further, McDaniel does not explain how the State's timing in adding the first degree child molestation charges unfairly prejudiced him. For these reasons, McDaniel's claim fails.

McDaniel also asserts in his SAG that the second amended information, filed on January 31, 2011, violated the rule in *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987). SAG at 16. That case held that "[a] criminal charge may not be amended after the State has rested its case-in-chief unless the amendment is to a lesser degree of the same charge or a lesser included offense." *Pelkey*, 109 Wn.2d at 491. The January 31 amendment coincided with the State's resting its case and, significantly, only struck the phrase "not in a state-registered domestic partnership with the defendant," because that element had been added to the statute after the time

period for McDaniel's charges. CP at 109-10. Simply conforming a charge with the governing statute at the time the State rests, when the Defendant can point to no prejudice from it, does not offend *Pelkey*. Further, McDaniel agreed to the amendment.

### VII. TIME OF ARRAIGNMENT ON THE FIRST AMENDED CHARGES

As noted, the charge of child molestation was added to the information on June 15, 2010. McDaniel, though, was not arraigned on it until January 25, 2011, over seven months later, well beyond the 14-day period set in CrR 4.1. The record discloses no reason for this delay.

The absence of arraignment by itself, however, is not a due process violation. *State v. Anderson*, 12 Wn. App. 171, 173, 528 P.2d 1003 (1974). Rather, harm occurs when the absence of arraignment deprives the accused and counsel of sufficient notice and adequate opportunity to defend. *Garland v. Washington*, 232 U.S. 642, 645, 34 S. Ct. 456, 58 L. Ed. 772 (1914). An information may be amended without re-arraignment if the defendant's substantial rights are not prejudiced. *State v. Allyn*, 40 Wn. App. 27, 35, 696 P.2d 45 (1985). The defendant bears the burden of showing prejudice. *State v. Royster*, 43 Wn. App. 613, 619-20, 719 P.2d 149 (1986).

McDaniel's counsel told the court that he had received a copy of the amended information in June 2010, that he had made his client aware of the amended charges that month, and that he was well aware the State was proceeding on both counts. No evidence was offered of any harm or prejudice to McDaniel from the late re-arraignment. Under the cases above, the late arraignment, although regrettable, does not constitute error requiring reversal.

### VIII. DOUBLE JEOPARDY

McDaniel asserts that the State violated his constitutional protections against double jeopardy by charging him in a second count with a separate crime for the same act. Article 1, section 9 of the Washington Constitution and the Fifth Amendment to the federal constitution

protect persons from a second prosecution for the same offense and from multiple punishments for the same offense imposed in the same proceeding. *State v. Turner*, 169 Wn.2d 448, 454, 238 P.3d 461 (2010). Here, the jury convicted McDaniel on only one of his two counts; thus, no double jeopardy issues arise.

## IX. EFFECTIVE ASSISTANCE OF COUNSEL

Finally, McDaniel asserts that his attorney provided ineffective assistance of counsel because (1) he did not challenge the specificity of the charging document, (2) he did not object to the amended charges, (3) he did not object to continuances when his client objected, (4) he did not ask for a mistrial or dismissal after C.D. testified, and (5) he did not raise the issue of a defective second arraignment on the amended charges. We disagree.

To prevail on an ineffective assistance of counsel claim, McDaniel must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If McDaniel fails to satisfy either part of the test, we need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). McDaniel is prejudiced if it is reasonably probable that, if not for his counsel's deficient performance, the outcome would have been different. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998). McDaniel cannot base his ineffective assistance of counsel claim on conduct that can be fairly characterized as legitimate trial strategy or tactics. *McFarland*, 127 Wn.2d at 336; *see also State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

McDaniel argues that his counsel was deficient for not objecting to the amended charges and for not seeking dismissal of his charges where the information lacked a proper date. As we concluded above, the time period in the information was sufficient to apprise McDaniel of the charges, and the State properly amended the information. Because an attorney's performance is

15

not deficient for declining to raise frivolous or groundless matters, McDaniel's claims fail. *State v. Stevens*, 69 Wn.2d 906, 908, 421 P.2d 360 (1966). Finally, since there was no error, McDaniel cannot show prejudice.

McDaniel also argues that his counsel's performance was deficient because he failed to object to continuances when his client objected. As the trial court found, the continuances allowed his counsel time to prepare for trial. A defendant's right to trial by a certain time is a procedural right that defense counsel may waive, over the defendant's objection, to ensure effective representation and a fair trial. *State v. Finch*, 137 Wn.2d 792, 806, 975 P.2d 967 (1999).

Next, McDaniel argues that his counsel was deficient for not asking for a mistrial or dismissal after C.D. testified that her mother told her that they were going to go to trial in order to put McDaniel in jail. The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial could insure that the defendant receives a fair trial. *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002). Here, C.D.'s statement provided an opportunity for McDaniel to explore whether someone had influenced her testimony, and McDaniel's counsel did just that. C.D.'s statement did not prejudice McDaniel's case; if anything it helped it. His counsel did not perform deficiently because he refrained from asking for a mistrial on the basis of C.D.'s statement.

Finally, McDaniel argues that his counsel's performance was deficient because he did not raise the issue of a defective second arraignment on the amended charges. As held above, the second arraignment was not legally defective, although it was late. An attorney does not perform deficiently by refraining to challenge a legally sound action.

For these reasons, McDaniel's claims of ineffective assistance of counsel fail.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, J.

JOHANSON, A.C.J.