FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 41

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43249-8-II |
| Respondent, | |
| v. | |
| RICHARD DONALD LLOYD JANSSEN, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — A jury found Richard Donald Lloyd Janssen guilty of first degree assault with a deadly weapon enhancement. Janssen appeals, arguing that the trial court erred by admitting a witness's written statement as a *Smith*[1] affidavit and that the trial court erred by excluding evidence of the victim's drug use. We do not find any error, and we affirm.

## FACTS

On May 26, 2011, Brandon Allen Johnson was incarcerated at Cowlitz County Jail. That evening, Johnson was transferred into a new cell with Janssen. Several hours after the transfer, Janssen jumped on top of Johnson and began stabbing Johnson in the neck. Johnson was able to reach the call box and summon help. Corrections officers responded to the call and separated

---

[1] *State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982).

Janssen and Johnson. Johnson was first evaluated by the medical unit and then transported to the hospital. Johnson was treated for several lacerations on his face and neck.

While breaking up the altercation, Corrections Officer Tracy Bottemiller observed Janssen throw an object against the cell wall. Bottemiller later recovered the object which was approximately "four or five inches long, wrapped in, tightly in cellophane, it had a razor blade in the end of it and then it had some of the jail inmate clothing strips wrapped around it." 1 Report of Proceedings (RP) at 98.

After the altercation, Deputy Sheriff Lorenzo Gladson of the Cowlitz County Sheriff's Office was dispatched to the Cowlitz County Jail to investigate the incident. Gladson spoke to other inmates in the housing unit where the incident occurred. Rodger Berry agreed to write out a statement for Gladson. Berry wrote that Janssen called Johnson a weirdo and said that Johnson "would not last long" because Janssen was "going to [hurt] him bad." Ex. 3. Berry also filled out the statement on the bottom of the form which stated,

> I, Rodger N. Berry, Jr, do certify (declare) under penalty of perjury under the laws of the State of Washington that I have read the foregoing statement or it has been read to me and I know the contents of the statement, and that the foregoing statement is true and correct. (RCW 9A.72.085).

Ex. 3. Before Berry signed the statement, Gladson also explained to Berry that he was signing the statement under the penalty of perjury.

The State charged Janssen with first degree assault with a deadly weapon enhancement or, alternatively, second degree assault with a deadly weapon enhancement. Prior to trial, the State obtained material witness warrants for Berry and Johnson. Berry and Johnson were arrested on the warrants and testified at trial. When Johnson was arrested on the warrant,

officers found "two (2) well used glass drug pipes" which tested positive for amphetamines. Ex. 19.

At trial, Berry testified that Janssen told him that Johnson was not going to last long but that Janssen did not say why. Berry also testified that he made the statement voluntarily and signed it under the penalty of perjury. And he testified that the statement was truthful and accurate. The State did not move to admit Berry's statement. Berry was released from the subpoena after his testimony. Later, Deputy Gladson testified that he used Berry's statement to establish probable cause for the charges against Janssen. After Gladson's testimony, the State moved to admit Berry's statement as a *Smith* affidavit. The trial court admitted Berry's statement.

During cross-examination, Johnson testified that he had been arrested on a material witness warrant. Then defense counsel asked, "And at the time you got arrested this past weekend, isn't it true that you had in your pocket --." 1 RP at 119. The State objected and the trial court sustained the objection.

The jury found Janssen guilty of first degree assault with a deadly weapon enhancement. The trial court found that Janssen was a persistent offender and sentenced him to life without the possibility of early release.[2] Janssen timely appeals.

## ANALYSIS

Janssen appeals, arguing that the trial court violated his Sixth Amendment right to confrontation by (1) admitting Berry's statement after Berry had already been released from the subpoena, and (2) excluding evidence that Johnson was in possession of drug pipes at the time of

---

[2] Janssen does not challenge the trial court's persistent offender finding on his sentence to life without the possibility of early release.

3

his arrest. Berry was subject to cross-examination and his statement was properly admitted as a *Smith* affidavit. The trial court did not err by excluding evidence that Janssen was arrested with drug pipes because Janssen failed to make an offer of proof that established the pipes' relevance. Accordingly, there was no error and we affirm.

BERRY'S STATEMENT

Janssen argues that the trial court violated his Sixth Amendment right to cross-examine witnesses by admitting Berry's statement after Berry had been released from the subpoena. We review a trial court's decision to admit a *Smith* affidavit for abuse of discretion. *State v. Nelson*, 74 Wn. App. 380, 385, 874 P.2d 170, *review denied*, 125 Wn.2d 1002 (1994). In *State v. Smith*, 97 Wn.2d 856, 863, 651 P.2d 207 (1982), the court held that a written statement taken in the course of an investigation can be admitted as substantive evidence under ER 801(d)(1)(i)[3] if the statement is sufficiently reliable. When evaluating the reliability of the statement, the court considers

> (1) whether the witness voluntarily made the statement; (2) whether there were minimal guaranties of truthfulness; (3) whether the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause; and (4) whether the witness was subject to cross examination when giving the subsequent inconsistent statement.

*Nelson*, 74 Wn. App. at 387 (footnote omitted) (citing *Smith*, 97 Wn.2d at 861-63). Here, Janssen does not challenge the first three factors, but rather he argues that Berry was not subject to cross-examination because Berry was released from the subpoena before the trial court admitted his statement.

---

[3] ER 801(d)(1) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."

A defendant has a constitutional right to cross-examine witnesses to expose bias, prejudice, or interest. *State v. Buss*, 76 Wn. App. 780, 787, 887 P.2d 920 (1995), *abrogated on other grounds by State v. Martin*, 137 Wn.2d 774, 975 P.2d 1020 (1999). Here, Berry testified at trial and was subject to cross-examination. Although the substance of the written statement was not admitted at that time, Berry testified about giving the statement to Deputy Gladson. Janssen had the opportunity to elicit evidence of potential bias or prejudice, therefore Berry was subject to cross-examination. Because Berry was subject to cross-examination concerning the statement, the trial court did not err by admitting Berry's statement as a *Smith* affidavit.

More importantly, the admission of Berry's statement was clearly harmless. Violations of the confrontation clause are subject to harmless error analysis. *State v. Davis*, 154 Wn.2d 291, 304, 111 P.3d 844 (2005), *aff'd by Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). When determining whether a constitutional error is harmless, we apply the overwhelming untainted evidence test. *Davis*, 154 Wn.2d at 305. "Under that test, where the untainted evidence admitted is so overwhelming as to necessarily lead to a finding of guilt, the error is harmless." *Davis*, 154 Wn.2d at 305 (citing *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002)).

Here, several corrections officers observed Janssen on top of Johnson repeatedly hitting or stabbing Johnson in the head and neck. There was essentially no controversy about whether Janssen attacked Johnson. Instead, the defense argued that Janssen was guilty of fourth degree assault, rather than first degree or second degree assault, because the razor blade weapon was not a deadly weapon. A deadly weapon is any weapon "which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). Excluding Berry and Johnson's testimony, the

State presented evidence that Janssen stabbed Johnson repeatedly in the head and neck area with a weapon "four or five inches long, wrapped in, tightly in cellophane, it had a razor blade in the end of it and then it had some of the jail inmate clothing strips wrapped around it." 1 RP at 98. When a razor blade is used to repeatedly stab another person in the head or neck it is capable of causing death or substantial bodily harm. Therefore, any error in relation to Berry's or Johnson's testimony is harmless.

EVIDENCE OF JOHNSON'S POSSESSION OF DRUG PIPES

Janssen also argues that the trial court violated his Sixth Amendment right to confrontation when it excluded evidence that Johnson was in possession of drug pipes when he was arrested on the material witness warrant. First, Janssen alleges that the trial court improperly limited the scope of cross-examination because (1) evidence of drug use was relevant to Johnson's ability to "recall and accurately relate past events" and (2) evidence of possession of drug pipes was relevant to show bias because "it behooved [Johnson] to testify consistent with the State's wishes, whether true or not, in the hopes that the state would either not charge him with this new offense, or that the state would give him a favorable recommendation if it did charge him." Br. of Appellant at 12. However, Janssen failed to make an adequate showing that evidence that Johnson was arrested with drug pipes was relevant. Therefore, the trial court did not abuse its discretion by excluding evidence that Johnson was arrested in possession of drug pipes.

We review a trial court's evidentiary rulings limiting the scope of cross-examination for manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985). "The right to confront and cross-examine adverse witnesses is guaranteed by both the federal and state constitutions." *State v. Darden*, 145 Wn.2d 612, 620, 41

P.3d 1189 (2002). But the right to confront and cross-examine adverse witnesses is not absolute and is limited by general considerations of relevance. *Darden*, 145 Wn.2d at 621 (citing ER 401, 403; *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983)).

First, Janssen argues that evidence of Johnson's recent drug use was relevant to Johnson's ability to "recall and accurately relate past events." Br. of Appellant at 12. Not only does Janssen fail to cite any authority for this proposition, existing authority is directly to the contrary. Evidence of drug use is admissible for impeachment only where a reasonable inference exists that the individual was under the drug's influence either during the event or when testifying. *State v. Tigano*, 63 Wn. App. 336, 344, 818 P.2d 1369 (1991), *review denied*, 118 Wn.2d 1021 (1992). Evidence of drug use on other occasions, or of drug addiction, is generally inadmissible on the ground that it is impermissibly prejudicial. *Tigano*, 63 Wn. App. at 344-45 (citing *State v. Renneberg*, 83 Wn.2d 735, 737, 522 P.2d 835 (1974)). Here, there was no indication that Johnson was under the influence of drugs at the time of the assault or while he was testifying. Therefore, the trial court did not err by excluding evidence of Johnson's drug use for the purposes of impeaching Johnson's ability to adequately recall and relate past events.

Second, Janssen argues that evidence that Johnson was arrested in possession of drug pipes that tested positive for amphetamines was relevant because Johnson may be testifying favorably for the State in an attempt to get the State to decline to file charges or offer him a plea bargain. However, there was no evidence that Johnson was getting any benefit from the State in exchange for his testimony. The trial court has discretion to reject cross-examination where the circumstances remotely tend to show bias or prejudice, where the evidence is vague, or where the evidence is merely argumentative and speculative. *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980) (citing *State v. Jones*, 67 Wn.2d 506, 512, 408 P.2d 247 (1965); *State v.*

No. 43249-8-II

*Knapp*, 14 Wn. App. 101, 540 P.2d 898, *review denied*, 86 Wn.2d 1005 (1975)). Here, Janssen's argument is based on speculation about whether Johnson was testifying falsely in an attempt to convince the State to treat him favorably. At the time of trial, there was no indication that Janssen was being offered a deal from the State or even that he would be charged for the possession of the drug pipes.[4] Accordingly, the trial court did not err by excluding evidence that Johnson was in possession of drug pipes when he was arrested on the material witness warrant.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

HUNT, P.J.

MAXA, J.

---

[4] We also note that it may be improper for the State to charge a defendant with a crime resulting exclusively from his arrest on a material witness warrant. Any mention of a potential deal or leniency in charging would be highly speculative and an improper basis for impeachment. Accordingly, it would be a best practice to limit evidence of bias to situations in which the witness has received a specific benefit from a plea or charging recommendation.

8