[No. 32053-3-II.   Division Two.   November 15, 2005.]

*In the Matter of the Detention of* RICHARD A. BROTEN, *Appellant.*

*Richard A. Broten*, pro se.

*Peter B. Tiller* (of *The Tiller Law Firm*), for appellant.

*Robert M. McKenna, Prosecuting Attorney*, and *Robert T. Crandell, Assistant*, for respondent.

¶1  BRIDGEWATER, J. — Richard A. Broten appeals his civil commitment under chapter 71.09 RCW, the sexually violent predators act. We hold that Broten's act of being in a park at a children's playground without a chaperone was sufficient evidence that he committed a recent overt act supporting the jury's finding that he is a sexually violent predator. Broten's assertions that he was denied a fair trial due to juror misconduct and because prospective jurors were biased against sex offenders are meritless. We affirm.

## FACTS

¶2  Broten was born on February 17, 1965, and has been convicted of two sexually violent crimes.[1] He was convicted of indecent liberties in December 1986 for molesting his eight-year-old female cousin. In 1989, while still on parole supervision, Broten raped his infant daughter by inserting his finger into her vagina while changing her diaper. In December 1990, Broten pleaded guilty to first degree rape of a child.

¶3  On May 8, 1997, Broten was released to community custody status. Three days later, he violated his conditions of release by contacting a child at a lake without a chaperone. According to Broten's rules of supervision, he was not permitted to contact minors without a chaperone or to frequent parks, recreational areas, shopping malls, and other areas where "minors [are] known to congregate." 2 Report of Proceedings (RP) (Jun. 23, 2004) at 236. Broten also was cited for possessing pornography. He was ordered to attend sex offender treatment.

¶4  In August 1997, Broten's community corrections officer, Barbara Tyler, learned that Broten was involved in a

---

[1] *See* RCW 71.09.020(15).

romantic relationship with another convicted sex offender, 18-year-old Bethany Dunn. Broten's rules of treatment prohibited him from contacting other sex offenders. Additionally, Broten admitted during a polygraph examination that he had had contact with Dunn's 15-month-old child. He was subsequently sentenced to 120 days of confinement and re-released in March 1998. At trial, Tyler testified that Broten was considered "high risk" and that he had been incarcerated twice during the time that she supervised him. 2 RP at 245.

¶5 Broten's supervision was transferred to community corrections officer Scott Lee in April 1998. While under Lee's supervision, Broten violated his conditions of release by possessing photographs of his daughter. Additionally, on June 6, 1998, at around 8:00 P.M., Broten was ticketed for driving the wrong way on a one-way road in Seward Park, located in Seattle, Washington.

¶6 Officer Ralph Wilson of the Seattle Police Department testified that on that evening he observed Broten's vehicle parked in a lot near a playground at Seward Park. He stated that it was a hot, summer night and children were still outside playing. As Officer Wilson drove by, Broten pulled out of the parking lot and drove the wrong way out of the park. When stopped, Broten told Officer Wilson that he was not permitted to be in parks or around children without a chaperone and, when Wilson asked why he was in the park, Broten did not respond. 2 RP at 367-68. Officer Wilson contacted the Department of Corrections because "[he] was concerned about [Broten] being so close to the children playing . . . [without] a legitimate reason for being there." 2 RP at 370. Based on this incident, Lee arrested Broten.

¶7 Broten took a polygraph examination on June 19, 1998. During the exam, Broten admitted to masturbating while thinking about "possible new victims" and young girls, aged five years to adult. 2 RP at 326-27. He stated that he masturbated to fantasies about undressing the girls and inserting his tongue into their vaginas, having sexual intercourse with them, and thinking "how tight" their

vaginas would be. Broten also admitted that since his release, he had masturbated in his car and had gone to shopping malls and parks. He went to Seward Park approximately once per week.

¶8 Broten was returned to custody and, on November 9, 1998, the State filed a petition to commit Broten as a sexually violent predator (SVP) under chapter 71.09 RCW.

¶9 The statute under which the State sought to commit Broten provides in relevant part:

> When it appears that . . . a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act[ ] and it appears that the person may be a sexually violent predator, . . . the attorney general if requested by the prosecuting attorney may file a petition alleging that the person is a "sexually violent predator" and stating sufficient facts to support such allegation.[2]

RCW 71.09.030(5).

¶10 Prior to the SVP trial, the State amended its petition, omitting its allegation that Broten had committed a "recent overt act" because he had been incarcerated for community placement violations when the petition was filed. Clerk's Papers at 19. Broten was tried and committed as an SVP. We reversed the order of commitment in *In re Detention of Broten*, 115 Wn. App. 252, 62 P.3d 514, *review denied*, 150 Wn.2d 1010 (2003), finding that, on remand, the State was required to prove that Broten had committed a recent overt act, not merely that he had violated his conditions of release. *In re Broten*, 115 Wn. App. at 257.

---

[2] A "[s]exually violent predator" is defined as:

any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

RCW 71.09.020(16).

¶11 Broten was re-tried before a jury, beginning June 22, 2004, pursuant to RCW 71.09.060(1).[3] The State relied upon the incident at Seward Park as the "recent overt act." The violations of his release were relied upon to show Broten's "history and mental condition," as set forth in the definition of "recent overt act." Br. of Resp't at 5. Dr. Brian Judd, a licensed psychologist and certified sex offender treatment provider, testified regarding his evaluation of Broten.

¶12 Dr. Judd testified that he had diagnosed Broten with pedophilia (sexually attracted to both males and females) and paraphilia (not otherwise specified) and with antisocial personality disorder. He opined that Broten's mental abnormalities and personality disorder caused Broten to have serious difficulty in controlling his sexually violent behavior and that he was likely to continue committing predatory acts of sexual violence if not confined to a secure facility. He also stated that Broten was at a "very high risk" for reoffending. 3 RP (Jun. 24, 2005) at 488.

¶13 Dr. Judd further testified that Broten had committed a "recent overt act" between May 8, 1997 and June 30, 1998, while he was released to the community. 3 RP at 499. He stated that the Seward Park incident, taken together with Broten's mental history, numerous release violations, and pattern of deceptiveness, constituted a recent overt act because Broten was actively engaging in "deviant arousal that he [was] not intervening on" and he was "now placing himself in high risk situations where minors would reason-

---

[3] RCW 71.09.060(1) provides in relevant part:

The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator . . . . If, on the date that the petition is filed, the person was living in the community after release from custody, the state must also prove beyond a reasonable doubt that the person had committed a recent overt act.

A "[r]ecent overt act" is

any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act.

RCW 71.09.020(10).

ably be expected to congregate." 3 RP at 502. Dr. Judd testified that Broten's behavior in going to locations where minors could reasonably be expected to congregate was part of Broten's "offense cycle," or a "buildup . . . in anticipation of offending." 3 RP at 502, 490-91.

¶14 On June 25, 2004, after the defense had rested, the trial court informed counsel that it had received notice that juror eight volunteered that Broten "may have stalked her in the past." 4 RP (Jun. 25, 2004) at 586. Outside the presence of the jury, the court questioned juror eight regarding the note.

¶15 Juror eight testified that her concerns about Broten were like "pieces of a puzzle," coming together throughout Broten's trial. 4 RP at 592. When she heard testimony regarding Lake Washington in Kirkland, Washington, she began to believe that Broten might have stalked her because in the 1980s or early 1990s, a male driving a car had followed her while she was walking near Lake Washington Boulevard. The man exposed himself and was masturbating. She immediately filed a police report. Juror eight did not see the alleged stalker's face but she believed it might have been Broten because she "thought [she] had heard [his] name" in relation to the incident. 4 RP at 594. Juror eight further testified that she had not disclosed the incident during voir dire because she did not think of it until later in the trial; she stated, "[y]ou know how sometimes a light bulb just comes on?" 4 RP at 595. Juror eight stated that she could remain impartial and that her concerns would not impact her deliberations.

¶16 During a recess, the State obtained juror eight's police report regarding the incident, which stated that the alleged stalking had occurred in 1995—a time during which Broten was incarcerated. The trial court informed juror eight that Broten was incarcerated during the incident, and she indicated that she no longer believed Broten was the alleged stalker. Juror eight also stated that her experience would not affect her deliberations in Broten's case and she agreed not to discuss the incident with other members of

the jury. The court permitted juror eight to remain on the jury. Broten then moved for a mistrial, which the court denied.

¶17 The jury found that Broten was an SVP, and the court entered an order of commitment on June 25, 2004.

## I. Recent Overt Act

¶18 Broten first contends that the evidence is insufficient to support the jury's finding that he committed a recent overt act. We disagree.

■ ¶19 Chapter 71.09 RCW is premised on a finding of current dangerousness of those subject to commitment. *In re Det. of Henrickson*, 140 Wn.2d 686, 692, 2 P.3d 473 (2000). Under the statute, a "[s]exually violent predator" must have been convicted of, or charged with, a crime of sexual violence and suffer from a mental abnormality or personality disorder that "makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16). The State must prove beyond a reasonable doubt that the individual it seeks to commit is an SVP. RCW 71.09.060(1).

¶20 Further, if at the time the petition for commitment was filed the individual was living in the community after release from custody, the State must also prove beyond a reasonable doubt that the person committed a recent overt act. RCW 71.09.060(1). A "[r]ecent overt act" is any "act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." RCW 71.09.020(10).

■ ¶21 In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State and determine if it could permit a rational trier of fact to find the essential elements beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). A claim of insufficiency admits the truth of the State's evidence and all

inferences that can be drawn therefrom. *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is as reliable as direct evidence. *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact regarding a witness's credibility, conflicting testimony, and the persuasiveness of the evidence. *State v. Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶22 Here, as the State concedes, Broten did not cause actual harm while out of custody. We are asked to evaluate the incident at Seward Park, where Broten made no actual contact with children but was in an area where the terms of his release specifically prohibited him from being without a chaperone. Nevertheless, Broten's current dangerousness was established because he created a reasonable apprehension of harm of a sexually violent nature.

¶23 Broten's history during his release is relevant under the statute, despite the State's reliance solely upon the Seward Park incident. Only three days after his release into the community, Broten violated his conditions of release by contacting, without a chaperone, a minor at a lake. He also became romantically involved with a convicted sex offender, had contact with her 15-month-old child, and admitted to frequenting parks and malls without supervision.

¶24 In addition, Dr. Judd testified that Broten's mental disorders and antisocial personality disorder rendered him unable to control his sexual behavior and highly likely to reoffend. Dr. Judd further testified that Broten's behavior of frequenting locations where minors could reasonably be expected to congregate was part of Broten's "offense cycle," or a "buildup . . . in anticipation of offending." 3 RP at 502, 490-91. And Broten admitted to masturbating while thinking about "possible new victims" and young girls. 2 RP at 326-27.

¶25 During the incident relied upon by the State for the "recent overt act," Broten was arrested in Seward Park, where he was parked in a lot near a playground where children were playing. He admitted that he was not permitted, without a chaperone, to be in parks or other areas

where children were likely to congregate and provided no legitimate reason for his presence at Seward Park. This act, taken together with Broten's mental history, numerous release violations, admission of fantasizing about molesting and raping young girls, and pattern of placing himself in high risk situations in anticipation of causing sexually violent harm, constituted a recent overt act. The record sufficiently supported a finding that Broten's behavior could cause a reasonable person apprehension that Broten would reoffend in a sexually violent manner.

## II. Juror Misconduct

¶26 Broten next asserts that the trial court erred in failing to grant a mistrial due to juror misconduct. He argues that juror eight committed misconduct during voir dire in failing to disclose the stalking incident, and her initial beliefs regarding Broten's involvement and that this conduct denied him the ability to challenge her both peremptorily and for cause. In response, the State contends that the trial court acted within its discretion in denying Broten's motion for a mistrial. The State is correct.

¶27 Whether to grant a motion for mistrial is a matter addressed to the sound discretion of the trial court and is reviewed for an abuse of discretion. *State v. Tigano*, 63 Wn. App. 336, 342, 818 P.2d 1369 (1991), *review denied*, 118 Wn.2d 1021 (1992). A trial court abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable. *State v. Barnes*, 85 Wn. App. 638, 669, 932 P.2d 669, *review denied*, 133 Wn.2d 1021 (1997).

¶28 The United States and Washington State Constitutions provide that the right to trial by jury shall be preserved and remain inviolate. U.S. Const. amend. VII; Wash. Const. art. I, § 21. The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct. *Smith v. Kent*, 11 Wn. App. 439, 443, 523 P.2d 446, *review denied*, 84 Wn.2d 1007 (1974). But litigants are entitled to a fair trial, not a perfect one.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984). A juror's failure to speak during voir dire regarding a material fact can amount to juror misconduct. *Allyn v. Boe*, 87 Wn. App. 722, 729, 943 P.2d 364 (1997), *review denied*, 134 Wn.2d 1020 (1998). The United States Supreme Court has held that to obtain a new trial in such a situation, a party must prove (1) that "a juror *failed to answer honestly* a material question on *voir dire*" and (2) that "a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556 (first emphasis added).[4]

¶29 Washington cases are in accord. *See In re Pers. Restraint of Lord*, 123 Wn.2d 296, 313, 868 P.2d 835, *cert. denied*, 513 U.S. 849 (1994) (any misleading or false answers during voir dire require reversal only if accurate answers would have provided grounds for a challenge for cause); *Tigano*, 63 Wn. App. at 342 (information known during voir dire but not revealed upon request will be prejudicial if it is material and would have provided the objective basis needed to challenge for cause).

¶30 Here, juror eight did not intentionally fail to disclose the stalking incident nor did she give misleading or false answers during voir dire. She simply later recalled the event, and Broten's possible involvement, during trial. Juror eight testified that her realization of the event was like "pieces of a puzzle," 4 RP at 592, coming together throughout the trial and that the "light bulb" did not

---

[4] *McDonough* involved a products liability suit, and jurors were asked during voir dire whether they, or members of their immediate family, had *sustained* any severe injuries resulting in disability or prolonged pain and suffering. *McDonough*, 464 U.S. at 550. Subsequent to trial, the parties learned that a juror's son had sustained a broken leg in a tire explosion, which the juror did not disclose during voir dire. *McDonough*, 464 U.S. at 551. The juror stated that he did not disclose the incident because he did not believe his son's injury was severe or resulted in disability or prolonged pain and suffering. *McDonough*, 464 U.S. at 551. In denying the petitioner's claim of juror misconduct, the Court stated, "[t]o invalidate the result of a 3-week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555. Additionally, the Court held that a claim that a truthful disclosure would have provided a basis for a peremptory challenge is insufficient to warrant a new trial. *McDonough*, 464 U.S. at 555-56.

"come[ ] on" until after she had heard certain testimony. 4 RP at 595. As in *McDonough*, juror eight's "mistaken, though honest, response" to questioning during voir dire did not constitute misconduct; thus, Broten fails to establish the first prong of the *McDonough* test. *See also State v. Rempel*, 53 Wn. App. 799, 803, 770 P.2d 1058 (1989) (an unintentional failure to disclose information not directly related to the case does not necessarily show a juror's prejudice sufficient to require a new trial; finding that a juror's voir dire answer was a " 'mistaken, though honest, response' " where she realized during trial that she was acquainted with the defendant) (quoting *McDonough*, 464 U.S. at 555), *rev'd on other grounds*, 114 Wn.2d 77, 785 P.2d 1134 (1990).

¶31 Moreover, juror eight acted diligently in reporting the stalking incident to the court when she did recall the event. After ample precaution and inquiry, the court found no prejudice in permitting juror eight to remain on the jury. Broten contends that juror eight nevertheless waited "until the 11th hour" in reporting the incident on June 24 because testimony that he had been at Lake Washington was developed by June 23. Br. of Appellant at 35. But Broten points to no evidence in the record demonstrating that juror eight recalled the event on June 23 or that she intentionally delayed reporting it and, even if she had, Broten nevertheless would not have been able to challenge her during voir dire. Further, Dr. Judd testified at length regarding Broten's mental history and sexual behaviors on June 24, which could have influenced juror eight's recollection of the stalking incident.

¶32 Because we find that juror eight did not commit misconduct, we need not address the second prong of the *McDonough* test, i.e., whether a "correct response" by juror eight would have provided a valid basis for a challenge for cause. *McDonough*, 464 U.S. at 556. Nevertheless, we note that Broten is in error in asserting that a new trial is warranted where a truthful disclosure would have independently provided a basis for a peremptory challenge. To

support this proposition, Broten cites to *State v. Simmons*, 59 Wn.2d 381, 368 P.2d 378 (1962), and *Smith*, 11 Wn. App. 439, and he argues that in *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 776 P.2d 676 (1989), our Supreme Court quoted language from *Smith*, stating that a new trial is warranted where a juror " 'conceals information properly requested by a litigant to enable him to [exercise a] peremptory challenge.' " *Robinson*, 113 Wn.2d at 160 (quoting *Smith*, 11 Wn. App. at 441).

¶33 But as noted by Division One in *State v. Cho*, 108 Wn. App. 315, 321, 30 P.3d 496 (2001), *review denied*, 153 Wn.2d 1021 (2005), "10 years after [*Smith*], the United States Supreme Court set forth a different rule in *McDonough*": that the loss of the ability to exercise a peremptory challenge is insufficient to warrant a new trial. In *Lord*, 123 Wn.2d at 313, our Supreme Court held that misleading or false answers during voir dire require reversal only where accurate answers would have provided grounds for a challenge for cause. And we have held accordingly. *See Tigano*, 63 Wn. App. at 342 (information not revealed during voir dire is prejudicial if it would have provided the objective basis needed to challenge for cause).

¶34 In sum, Broten has failed to demonstrate juror misconduct. The trial court did not abuse its discretion in refusing to grant a mistrial. Juror eight reported the incident to the court when she recalled it, the parties informed her that Broten was incarcerated at the time of the incident and, thus, could not have been the perpetrator, and juror eight testified that her experience would not affect her deliberations in Broten's case.

### III. Fair and Impartial Jury

¶35 Broten also contends that he is entitled to a new trial due to the "overwhelming bias" of numerous prospec-

tive jurors. Br. of Appellant at 37 (all capital letters omitted). This claim is without merit.

¶36 To support his contention, Broten cites at great length comments in the record by potential jurors regarding sex offenders. Each of these individuals essentially stated that he or she could not be impartial toward Broten, and each was removed from the venire. Only those who stated that they could properly exercise the duties of a juror were sworn to try the case; and we presume " 'that each juror sworn in a case is impartial and above legal exception, otherwise, he would have been challenged for cause.' " *Rempel*, 53 Wn. App. at 804 (quoting *State v. Kender*, 21 Wn. App. 622, 626, 587 P.2d 551 (1978), *review denied*, 91 Wn.2d 1017 (1979)). Broten offers no evidence demonstrating that the individuals actually selected as jurors in his case were biased or that he was denied a fair trial.

IV. Statement of Additional Grounds

¶37 Finally, Broten has filed pro se a statement of additional grounds[5] (SAG). He argues that his trial counsel was ineffective because counsel failed to: "[h]ire a professional [e]valuation [e]xpert"; properly prepare him for trial; file motions; and make timely objections to preserve "possible [a]ppealable [t]rial issue's [sic]." SAG. But his claims are either based on evidence outside the record or fail to inform the court of the nature and occurrence of the alleged errors. *See In re Pers. Restraint of Waggy*, 111 Wn. App. 511, 518, 45 P.3d 1103 (2002) (appellate courts will not consider evidence outside the trial record); *State v. Byrd*, 30 Wn. App. 794, 800, 638 P.2d 601 (1981) (a personal restraint petition is the appropriate procedure to raise a claim of ineffective assistance of counsel on appeal based upon

---

[5] RAP 10.10(a).

matters outside the record); RAP 10.10(c). Thus, his claims
fail.

¶38  Affirmed.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

Review denied at 158 Wn.2d 1010 (2006).