FILED
COURT OF APPEALS
DIVISION II

2015 JAN 27 AM 8:49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Detention of | No. 45000-3-II |
| JOHN CHARLES ANDERSON, | |
| Appellant. | UNPUBLISHED OPINION |

SUTTON, J. — After approximately 13 years, 2 trials, and 2 appeals, the trial court ordered

John Charles Anderson committed to the Special Commitment Center at McNeil Island as a

sexually violent predator. Anderson appeals his commitment, arguing that (1) the trial court lacked

subject matter jurisdiction to commit him under RCW 71.09.030(1)(e)[1]; (2) his sexual contacts

with mental patients during his voluntary commitment do not qualify as a "recent overt act" as a

---

[1] RCW 71.09.030(1) states:

> A petition may be filed alleging that a person is a sexually violent predator and stating sufficient facts to support such allegation when it appears that: (a) A person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement; (b) a person found to have committed a sexually violent offense as a juvenile is about to be released from total confinement; (c) a person who has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial is about to be released, or has been released, pursuant to [former] RCW 10.77.086(4) [(2012)]; (d) a person who has been found not guilty by reason of insanity of a sexually violent offense is about to be released, or has been released, pursuant to RCW [ ]10.77.020(3), 10.77.110(1) or (3), or 10.77.150; or (e) a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act.

matter of law; and (3) there is insufficient evidence to support the jury's verdict finding that he is a sexually violent predator. We affirm.

## FACTS

Anderson's case began 26 years ago when Anderson, then 17 years old, anally raped a two-and-a-half-year-old boy. In May 1988, Anderson pleaded guilty to first degree rape of a child. The juvenile court imposed a manifest injustice sentence and sentenced Anderson to 100 weeks confinement at the Maple Lane School. While at Maple Lane, Anderson exposed himself to a female staff member at the school. Anderson was convicted of indecent exposure and sentenced to 45 days in jail. After serving his sentence, Anderson returned to Maple Lane. At this point, Anderson began expressing sadistic and homicidal ideations including sexually explicit, violent fantasies about the woman to whom he exposed himself.[2]

In 1990, after Anderson was released from Maple Lane, he voluntarily committed himself to Western State Hospital (WSH). Anderson stayed at WSH as a voluntary patient for 10 years. *In re Det. of Anderson*, 166 Wn.2d 543, 547, 211 P.3d 994 (2009) (*Anderson* II). During his time at WSH, Anderson earned grounds privileges and authorized leave with his mother. Anderson also engaged in sexual contacts with at least four other male patients at WSH. Three of the male patients suffered from developmental disabilities. The fourth patient suffered from severe mental illness. Although Anderson was repeatedly counseled to stop engaging in sexual contacts with other patients, he did not.

---

[2] Anderson's sexual history also includes a disturbing litany of sexually violent and deviant behavior prior to Anderson's incarceration at Maple Lane.

When the State was notified that Anderson was going to leave WSH, it filed a petition in 2000 to have Anderson committed at the Special Commitment Center (SCC) as a sexually violent predator. *Anderson* II, 166 Wn.2d at 547. The State conceded that Anderson had not been in total confinement while at WSH; therefore, it had to prove a recent overt act.[3] *Anderson* II, 166 Wn.2d at 549. The State alleged that Anderson's relationships while at WSH were recent overt acts that proved Anderson's current dangerousness. *Anderson* II, 166 Wn.2d at 549-50. In 2004, four years after the State filed its petition, Anderson's case proceeded to a bench trial. *In re Det. of Anderson*, 134 Wn. App. 309, 315, 139 P.3d 396 (2006) (*Anderson* I), *aff'd*, 166 Wn.2d 543, 211 P.3d 994 (2009). The trial court entered an order committing Anderson to the SCC as a sexually violent predator. *Anderson* II, 166 Wn.2d at 548. Anderson has been confined in the SCC since the State filed its original petition to commit him as a sexually violent predator. *Anderson* II, 166 Wn.2d at 547-48.

Anderson appealed the 2004 order committing him to the SCC as a sexually violent predator. *Anderson* I. In that appeal, Anderson argued that (1) the trial court erred by denying his motion to appoint another expert to testify at his trial, and (2) that his relationships at WSH could not be considered recent overt acts because they were consensual relationships with adult men. *Anderson* I, 134 Wn. App. at 312, 323. In 2006, we reversed the trial court's order committing Anderson because the trial court abused its discretion by failing to appoint a new expert to testify for Anderson at his trial; we remanded for a new trial. *Anderson* I, 134 Wn. App. at 321-22. And,

---

[3] A recent overt act is "any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors." RCW 71.09.020(12).

we determined that whether Anderson's relationships were recent overt acts was an issue of fact that the State bears the burden of proving to the jury. *Anderson* I, 134 Wn. App. at 322-24.

Both parties appealed our decision to the Washington State Supreme Court. *Anderson* II, 166 Wn.2d at 546. The Supreme Court affirmed our decision. *Anderson* II, 166 Wn.2d at 552. The court held that Anderson's sexual contacts with mental patients could be considered recent overt acts. *Anderson* II, 166 Wn.2d at 550. However, our Supreme Court also noted that "[w]hether or not Anderson's conduct amounted to a recent overt act, as with the other elements of the State's case, [would] have to be proved at that new trial." *Anderson* II, 166 Wn.2d at 552.

Prior to his second commitment trial in April 2013, Anderson moved to dismiss the State's petition. Anderson argued that the trial court lacked subject matter jurisdiction to commit him under RCW 71.09.030(1)(e). The trial court denied Anderson's motion to dismiss and the State's petition to commit Anderson as a sexually violent predator proceeded to a jury trial.

Dr. Larry Arnholt, Anderson's treating psychologist at WSH from 1994-2000, testified at trial. He testified that, although sexual relationships were not explicitly prohibited, they were discouraged. Throughout Anderson's treatment at WSH, Anderson was repeatedly counseled about his relationships with other patients. Arnholt stated that "there were many occasions when it was pointed out to Mr. Anderson that the developmentally disabled individuals are in many ways child-like in their emotional and intellectual development, and there were some parallels." 10 Report of Proceedings (RP) at 817. It was made clear to Anderson that he should not be engaging in those relationships because it was similar to what he had done with children. And, Anderson knew that his relationships with the men at WSH were "wrong," "hurtful," and "selfish". 10 RP at 840.

The State's expert, Dr. Amy Phenix, testified regarding Anderson's diagnoses and likelihood of reoffending. Phenix diagnosed Anderson with pedophilia, both male and female non-exclusive type, and sexual sadism. According to Phenix, neither pedophilia nor sexual sadism can be cured. They are permanent, life-long conditions that can only be managed. Phenix also diagnosed Anderson with a personality disorder with antisocial, borderline, and narcissistic traits. Antisocial personality traits include violating the rights of others, committing crimes, lying, acting impulsively, and being aggressive, irritable, and irresponsible. People with borderline personality traits have extreme difficulties with interpersonal relationships, have an unstable mood and self-image, and see themselves as victims rather than taking responsibility for their actions. And, narcissistic personality traits include being self-focused and selfish with a grandiose sense of self. Narcissistic personalities also lack empathy which enables them to be exploitive of others.

Phenix opined that Anderson's relationships during his time at WSH were recent overt acts because they demonstrated a continued pattern of taking advantage of vulnerable victims. She explained that the developmentally delayed and mentally ill men that Anderson became involved with were child-like in the sense that they were simplistic, immature, and easy to control. Phenix expressed particular concern because Anderson was counseled about the inappropriate nature of the relationships and he understood the parallels between children and vulnerable victims; however, Anderson chose to continue engaging in the sexual behavior. Ultimately, Phenix opined that, to a reasonable degree of psychological certainty, Anderson had committed recent overt acts by engaging in these relationships during his commitment at WSH.

Phenix testified that Anderson's pedophilia, sexual sadism, and personality disorders all affect his volitional capacity. Phenix stated that she believed Anderson would continue to have

"serious difficulty with his volition once he is released." 8 RP at 557. And, although treatment could allow a person to improve their volition, she did not believe that applied to Anderson. Phenix testified that Anderson had not made significant treatment gains while at WSH and he had not meaningfully participated in treatment since being confined at the SCC for 13 years. She expressed particular concerns about Anderson's inability to identify high risk factors because he admitted he was "'out of practice.'" 8 RP at 622. Phenix opined that Anderson had a high risk of reoffending.

The jury found that the State proved beyond a reasonable doubt that Anderson was a sexually violent predator. The trial court entered an order committing Anderson. Anderson appeals.

## ANALYSIS

Anderson argues that (1) the trial court lacked subject matter jurisdiction to commit him under RCW 71.09.030(1)(e); (2) his sexual contacts with mental patients were consensual and too remote in time to qualify as a "recent overt act" as a matter of law; and (3) there is insufficient evidence to support the jury's verdict finding that he is a sexually violent predator. We disagree.

### A. SUBJECT MATTER JURISDICTION

First, Anderson argues that the trial court lacked subject matter jurisdiction because RCW 71.09.030(1)(e) does not apply to him. He frames this argument as an issue of subject matter jurisdiction, which can be raised at any time, presumably to account for the fact that he declined to raise the issue during his first trial, during his first appeal to our court, and during his appeal to the Supreme Court. However, Anderson is mistaken; whether RCW 71.09.030(1)(e) applies to him is not an issue of subject matter jurisdiction. Because Anderson has failed to offer any other

6

reason why the law of the case doctrine does not bar him from raising this issue after his failure to raise it in either of his prior appeals, we consider only his argument of subject matter jurisdiction.

"Subject matter jurisdiction refers to a court's ability to entertain a *type* of case, not to its authority to enter an order in a particular case." *In re Marriage of Buecking*, 179 Wn.2d 438, 448, 316 P.3d 999 (2013) (emphasis added), *cert. denied*, 135 S. Ct. 171 (2014). The Washington State Constitution grants superior courts subject matter jurisdiction over all types of cases unless jurisdiction is vested exclusively in another court. WASH. CONST. art. IV, § 6. "'If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction.'" *In re Marriage of McDermott*, 175 Wn. App. 467, 482, 307 P.3d 717 (2013) (quoting *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 209, 258 P.3d 70 (2011)), *review denied*, 179 Wn.2d 1004 (2013).

Here, the type of controversy before our court was the State's petition to commit Anderson under RCW 71.09.030(1)(e) as a sexually violent predator. Under the Washington Constitution's broad grant of jurisdiction to the superior courts in article IV, section 6, the trial court had subject matter jurisdiction over the State's petition to commit Anderson as a sexually violent predator. Therefore, any error under RCW 71.09.030(1)(e) must go to something other than subject matter jurisdiction. *McDermott*, 175 Wn. App. at 482 (quoting *Cole*, 163 Wn. App. at 209).

Anderson has failed to define any error regarding RCW 71.09.030(1)(e) as anything other than a lack of subject matter jurisdiction. And, more importantly, he has offered no other justification for asking us, or the trial court, to consider this issue after more than 13 years, 2 trials, and 2 appeals. *State v. Elmore*, 154 Wn. App. 885, 896, 228 P.3d 760 (2010) ("Under the law of the case doctrine, we may refuse to address issues that were raised or could have been raised in a

prior appeal") (internal quotation marks omitted). Accordingly, we do not address the issue any further.

## B. RECENT OVERT ACT AS A MATTER OF LAW

Anderson next argues that the State did not prove he committed a recent overt act[4] because: (1) his sexual contacts at WSH were consensual and thus cannot form the basis for a recent overt act, and (2) his sexual contacts at WSH from 1990-2000, 13 years ago from the date of trial in 2013, are too remote in time to be considered "recent." Br. of Appellant at 21.

### 1. Sexual Contacts as Recent Overt Acts

Whether an act is a "recent overt act" is a mixed question of law and fact. *In re Det. of Brown*, 154 Wn. App. 116, 121, 225 P.3d 1028 (2010) (citing *In re Det. of Marshall*, 156 Wn.2d 150, 158, 125 P.3d 111 (2005)). De novo review would normally apply. *Anderson* II, 166 Wn.2d at 549. But, "[w]here there has been a determination of the applicable law in a prior appeal, the law of the case doctrine ordinarily precludes re[-]deciding the same legal issues in a subsequent appeal." *Folsom v. County of Spokane*, 111 Wn.2d 256, 263-64, 759 P.2d 1196 (1988).

Anderson argues that, as a matter of law, consensual sexual relationships cannot be considered recent overt acts. Our Supreme Court held that Anderson's sexual contacts with vulnerable WSH patients, whether consensual or not, could constitute a "recent overt act" as a matter of law. *Anderson* II, 166 Wn.2d at 550. Under the law of the case doctrine we will not

---

[4] A "recent overt act" is "any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors." RCW 71.09.020(12). The trial court's instructions to the jury at trial included this definition which was not challenged on appeal.

revisit whether Anderson's sexual contacts constitute a recent overt act as a matter of law. To the extent Anderson argues that insufficient evidence supports a factual finding that his sexual contacts meet the definition of recent overt act, his argument is addressed below.

### 2. The Recency Requirement of an Overt Act

Anderson argues by the time of trial in May 2013 that his 1990-2000 sexual contacts were too remote in time to have any bearing on his current dangerousness since it had been 13 years since his commitment as a sexually violent predator in 2000.[5] We reject Anderson's argument. His argument ignores the unusual facts of this case. Anderson has been in confinement continuously since 1988 and not living in the outside community; first confined at Maple Lane from 1988-1990, then at WSH voluntarily from 1990-2000, and then confined to SCC from February 2000 continuously up to today.

Washington courts recognize the difficulty, if not impossibility, of requiring the State to prove a "recent overt act" when a person is confined and has not lived in or had access to the outside community. When an individual is incarcerated, the State is not required to produce evidence of a "recent overt act" because "'for incarcerated individuals, a requirement of a recent overt act under the Statute would create a standard which would be impossible to meet.'" *In re Det. of Albrecht*, 147 Wn.2d 1, 8, 51 P.3d 73 (2002) (quoting *In re Pers. Restraint of Young*, 122 Wn.2d 1, 41, 857 P.2d 989 (1993)). "Due process 'does not require that the absurd be done before

---

[5] In *Anderson* II, our Supreme Court held that Anderson's acts were recent based on the fact that the most recent act occurred two months before the State filed the petition. *Anderson* II, 166 Wn.2d at 550. The Supreme Court's opinion does not, however, resolve the specific issue Anderson raises before us—whether the intervening 13 years he was confined at the SCC prevent the acts from being considered recent.

a compelling state interest can be vindicated.'" *Albrecht*, 147 Wn.2d at 8 (internal quotation marks omitted) (quoting *Young*, 122 Wn.2d at 41).

Under this well-settled principle of law, the period of time from 1990-2000, is the relevant period to determine whether Anderson's sexual contacts at WSH are recent overt acts and the jury was instructed and found that these acts were a "recent overt act."

### C. SUFFICIENCY OF THE EVIDENCE

Anderson claims insufficient evidence supports his sexually violent predator commitment. To prove that Anderson is a sexually violent predator, the State must prove that (1) he has a mental abnormality or personality disorder, (2) his mental abnormality or personality disorder makes him likely to engage in predatory acts of sexual violence if not confined to a secure facility, and (3) that Anderson committed a recent overt act. RCW 71.09.020(18), .060(1). The criminal standard of review applies to a sufficiency of the evidence challenge under RCW 71.09.030. *In re Det. of Thorell*, 149 Wn.2d 724, 744, 72 P.3d 708 (2003). "[T]he evidence is sufficient if, when viewed in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Thorell*, 149 Wn.2d at 744. All reasonable inferences must be drawn in favor of the State and interpreted most strongly against Anderson. *In re Det. of Audett*, 158 Wn.2d 712, 727, 147 P.3d 982 (2006). We do not second guess the credibility determinations of the fact finder. *In re Det. of Halgren*, 156 Wn.2d 795, 811, 132 P.3d 714 (2006). We defer to the trier of fact regarding conflicting testimony and the persuasiveness of the evidence. *In re Det. of Broten*, 130 Wn. App. 326, 335, 122 P.3d 942 (2005).

Because the sufficiency of the evidence test requires that we look at the evidence in the light most favorable to the State, we do not consider whether there is evidence in the record

10

supporting Anderson's assertions that he does not meet the definition of a sexually violent predator. Anderson's argument requires us to reweigh his evidence against the State's evidence; and, we do not reweigh evidence on appeal. Therefore, our review is limited to looking at whether the State's evidence is sufficient to support the jury's findings on the specific elements Anderson challenges. Here, Anderson does not challenge the sufficiency of the evidence proving that he has a mental abnormality or personality disorder—pedophilia, sexual sadism, and a personality disorder with borderline, antisocial, and narcissistic traits. Instead he argues there is insufficient evidence to prove that (1) his mental abnormalities and personality disorder cause a lack of control over his behavior, and (2) he committed a recent overt act.

### 1. Lack of Control

Anderson argues that the State failed to prove that his mental abnormalities and personality disorder cause a lack of control over his sexually violent behavior. Although "lack of control" is not a separate element required for commitment of a sexually violent predator, the jury's findings "must support the conclusion that the person has serious difficulty controlling behavior." *Thorell*, 149 Wn.2d at 742. A diagnosis of a mental abnormality or personality disorder alone is not sufficient to support a finding of a serious lack of control. *Thorell*, 149 Wn.2d at 761-62. But, if the finder of fact finds that there is a link between the mental abnormality or personality disorder and the likelihood of future acts of predatory acts of sexual violence, the fact finder has necessarily made a finding that the offender seriously lacks control of his or her sexually violent behavior. *Thorell*, 149 Wn.2d at 742-43. Anderson does not dispute that he has been diagnosed with a mental abnormality or personality disorder, nor does he dispute that he is likely to engage in predatory acts of sexual violence if not confined. Therefore, the question is whether the State presented

11

evidence proving that there is a link between Anderson's mental abnormalities and personality disorders and the likelihood that he will engage in predatory acts of sexual violence if not confined to a secure facility.

Here, Dr. Phenix testified that Anderson suffered from pedophilia and sexual sadism which were incurable, life-long conditions. And, that without meaningful and continued participation in treatment, Anderson would not be able to control the urges resulting from these mental abnormalities. She also testified that the characteristics of his personality disorder resulted in a disregard for rules, disrespect for the rights of others, and selfish behavior that focused on meeting his own needs and desires. And, Phenix testified that she did not believe that Anderson had learned how to control his behavior because he had not meaningfully participated in treatment while confined at the SCC, did not meet all his treatment goals at WSH, and had stated that he was "'out of practice'" in recognizing his triggers for reoffending. 8 RP at 622.

Phenix explicitly opined that Anderson's mental abnormalities and personality disorder affected his volitional control, and, she did not believe that Anderson would be able to control his behavior in the community. Based on Phenix's testimony, the State presented sufficient evidence to prove that there was a link between Anderson's mental abnormalities and the likelihood that he would engage in predatory acts of sexual violence if not confined to a secure facility. Therefore, there was necessarily sufficient evidence to prove that Anderson's mental abnormalities and personality disorders resulted in a lack of control over his behavior.

## 2. Recent Overt Acts

Anderson next argues that the State failed to present sufficient evidence that his sexual contacts with patients at WSH were recent overt acts.

Dr. Phenix testified that Anderson's sexual contacts with the four male patients at WSH shared characteristics that were consistent with his prior sexual offenses. Like child victims, the male patients Anderson had sex with at WSH were vulnerable and presented Anderson with the opportunity to take advantage of them. Dr. Phenix specifically testified that Anderson's sexual contacts with other male patients at WSH demonstrated that he was currently dangerous. The State also presented evidence that Anderson was repeatedly counseled not to enter into or continue these sexual contacts because they indicated continued manifestations of his sexual pathology and interfered with his treatment. And, at trial, Anderson testified that he engaged in these sexual contacts because he was a "horny individual" and because he "felt like it" even though he knew these acts were wrong. 10 RP at 876. Ultimately, Phenix testified that, to a reasonable degree of medical certainty, Anderson's relationships at WSH qualified as recent overt acts.

The evidence, viewed in the light most favorable to the State, was sufficient to allow a jury to find beyond a reasonable doubt that Anderson's sexual contacts at WSH were "recent overt

No. 45000-3-II

acts" that created a reasonable apprehension of sexually violent harm.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Worswick, P.J.

Lee, J.

14