# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

IN THE MATTER OF THE DETENTION OF:

RICHARD ALLEN RUDE, JR.,

Appellant.

No. 71460-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 8, 2015

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2015 JUN -8 AM 9: 42

SPEARMAN, C.J. — A person committed as a sexually violent predator may petition a court for conditional release to a less restrictive alternative (LRA). At a trial on the petition, the State bears the burden of proving beyond a reasonable doubt that the LRA is not in the committed person's best interest or does not include conditions to adequately protect the community. RCW 71.09.090(3)(d). Because the State in this case proved that releasing Richard Rude to his proposed LRA was not in his best interest, we affirm the trial court's denial of Rude's LRA petition.

## FACTS

Based on Rude's history of sexually violent offenses, the State petitioned to have him committed as a sexually violent predator (SVP). In June 2012, a jury determined that Rude is a SVP and he was civilly committed.

On July 24, 2013, Rude petitioned for a LRA. The State conceded that because the court had not previously considered a LRA for Rude, he was not required to show

that his condition had changed in order to receive a LRA trial. The State also conceded that Rude met the statutory criteria for a LRA trial and agreed to a trial on stipulated facts. Those facts included evidence from Rude's commitment trial and the results of his most recent annual review.[1] The reviewer, Dr. Steven Marquez, found that Rude is at "High risk" to reoffend, ranking in the 99.9 percentile of adult sex offenders for re-offense. Clerk's Papers (CP) at 105. That risk is compounded by Rude's avoidance of treatment, which includes "the established process of transparently examining his risks, constructing viable intervention strategies and effectively practicing them under clinical supervision." CP at 109.

At trial, the parties disagreed on the effect of the following emphasized language in RCW 71.09.090(2)(d):

---

[1] We recounted some of that evidence in our unpublished decision affirming Rude's SVP commitment, stating in part:

> At 18, [Rude] forcibly raped a 16 year old girl with another man while intoxicated. Rude and his friend took turns holding the girl down while the other raped her. . . .
> While out of custody and awaiting admittance at [Western State Hospital], Rude sexually assaulted a woman he drove home in a taxi cab. . . .
> After about a year at WSH, Rude was accused of trying to force another patient to perform oral sex on him. Rude admitted to punching the man . . . .
> In June 1994, after Rude's release from prison, he committed another rape. The victim was in the Skagit Speedway parking lot and had lost track of her friend. Rude offered to drive her around to look for her friend, but once she got in his truck, he sped away to a remote gravel pit. Rude made the victim take off her shirt and told her to perform oral sex. When she refused, Rude punched her in the face. Rude then raped her orally, vaginally, and anally. . . .
> In August 2008, Rude's cellmate, John Frost, reported that Rude sexually assaulted him. Frost claimed that they had an altercation that led to Rude "shadow boxing" him. Frost tried to push Rude away, but Rude grabbed Frost, pulled Frost down on his bed, and "shoved his fingers in [Frost's] ass." Frost struggled and eventually kicked over Rude's television, breaking it. Rude then became angry and hit Frost in the face. Rude was charged with an infraction for assaulting Frost.

In re Detention of Rude, 179 Wn. App. 1011, review denied, 180 Wn.2d 1017 (2014). (Footnotes omitted.)

> If the court has not previously considered the issue of release to a less restrictive alternative . . . the court shall consider whether release to a less restrictive alternative would be in the best interests of the person and conditions can be imposed that would adequately protect the community, **without considering whether the person's condition has changed.** (Emphasis added.)

Rude's counsel claimed this language applied to the LRA trial, precluded the court from considering Rude's lack of treatment, and limited it to considering whether his LRA plan was in his best interests and adequately protected the community. The State offered a different view of the statute:

> . . . we completely disagree on what this statute says. But when you look at it, this whole thing about the Court not considering whether the person has changed, if you look at the statute, look at subsection (2), and then you look at subsection (3), it's very clear that that is the initial . . . burden that they need.
> The Court, in order to get to this trial, does not have to consider whether the person has changed, but once we get to the trial, it's absolutely relevant. It's absolutely relevant to his risk to the community safety, to everything.

Verbatim Report of Proceedings (VRP) at 82. The State argued that Reed's proposed LRA was "a good plan for someone that has progressed and has gotten to the level in treatment where this would be safe for everyone" but was inappropriate "for someone at the level [Rude is] at, which is completely refusing to do treatment." VRP at 81.

The court denied Rude's request for a LRA and entered findings of fact and conclusions of law. The court found that Rude had not participated in sex offender treatment since his commitment in 2010, disagreed with important aspects of his treatment plans, including his diagnoses and risk factors, and would not participate in group therapy out of concern that any information he disclosed would be used against him. The court noted the long-term risk factors identified in Rude's annual review,

including "sexualized violence, sexual preoccupation, lack of emotional intimate relationships with adults, grievance thinking, poorly-managed anger, resistance to rules and supervision, and dysfunctional coping."[2] The court found that these risks were compounded by Rude's refusal to participate in treatment.[3] The court added that "Rude wants to manipulate and control his environment such that any treatment he receives is on his own terns."[4] Based on these findings, the court concluded as follows:

> The Court recognizes that it has the authority to grant an LRA in this case despite the fact that Mr. Rude is not participating in sex offender treatment at the SCC. The Court also recognizes that it has the authority to grant an LRA in this case despite the fact that there has been no change in Mr. Rude's mental condition since his commitment. However, the Court finds that Mr. Rude's history of treatment participation and his attitude towards treatment is relevant to his overall risk to the community and relevant to whether an LRA is in his best interests or will adequately protect the community.
>
> The Court finds that the proposed LRA is not appropriate at this time for Mr. Rude given his sexual offending history, his lack of transparency and poor participation in SOTP, his lack of understanding of his offending patterns, risks, and interventions, his disagreement with his diagnosed disorders and risk factors, and his ongoing refusal to address any of these issues in sex offender treatment.
>
> . . .
>
> The evidence . . . proves beyond a reasonable doubt that the proposed LRA is not in Mr. Rude's best interests and does not include conditions that would adequately protect the community.[5]

Rude appeals.

---

[2] Finding of Fact 17. CP at 799.

[3] Id.

[4] Finding of Fact 18. CP at 780

[5] Findings of Fact 19 and 20; Conclusion of Law 3. CP at 800-01. Conclusions of law denominated as findings of fact will be treated as conclusions of law. State v. Gaines, 122 Wn.2d 502, 508, 859 P.2d 36 (1993).

## DECISION

Rude contends the State did not carry its burden of showing, beyond a reasonable doubt, that his proposed LRA was not in his best interests or that adequate conditions could not be imposed to protect the community.[6] He contends the State's proof, and the court's decision, relied largely on evidence that could not be considered under RCW 71.09.090(2)(d). We disagree.

When construing a statute, we first examine the statute's plain meaning. State v. Bunker, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). We determine a statute's plain meaning from the ordinary meaning of its language, as well as from the statute's general context, related provisions, and the statutory scheme as a whole. State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). If the statute's meaning is plain, we give effect to that meaning. Id. RCW 71.09.090 (2)(3) provide in pertinent part as follows:

> (2)(a) Nothing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval. The secretary shall provide the committed person with an annual written notice of the person's right to petition the court for conditional release to a less restrictive alternative or unconditional discharge over the secretary's objection. The notice shall contain a waiver of rights. . . . If the person does not affirmatively waive the right to petition, the court shall set a show cause hearing to determine whether probable cause exists to warrant a hearing on **whether the person's condition has so changed** that: (i) He or she no longer meets the definition of a sexually violent predator; or (ii) conditional release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community. (Emphasis added.)

---

[6] RCW 71.09.090(3)(d).

5

(b) . . . At the show cause hearing, the prosecuting agency shall present prima facie evidence establishing that the committed person continues to meet the definition of a sexually violent predator and that a less restrictive alternative is not in the best interest of the person and conditions cannot be imposed that adequately protect the community. In making this showing, the state may rely exclusively upon the annual report prepared pursuant to RCW 71.09.070. The committed person may present responsive affidavits or declarations to which the state may reply.

(c) If the court at the show cause hearing determines that either: (i) The state has failed to present prima facie evidence that the committed person continues to meet the definition of a sexually violent predator and that no proposed less restrictive alternative is in the best interest of the person and conditions cannot be imposed that would adequately protect the community; or (ii) probable cause exists to believe that **the person's condition has so changed** that: (A) The person no longer meets the definition of a sexually violent predator; or (B) release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community, then the court shall set a hearing on either or both issues. (Emphasis added.)

(d) If the court has not previously considered the issue of release to a less restrictive alternative, either through a trial on the merits or through the procedures set forth in RCW 71.09.094(1), the court shall consider whether release to a less restrictive alternative would be in the best interests of the person and conditions can be imposed that would adequately protect the community, **without considering whether the person's condition has changed.** The court may not find probable cause for a trial addressing less restrictive alternatives unless a proposed less restrictive alternative placement meeting the conditions of RCW 71.09.092 is presented to the court at the show cause hearing. (Emphasis added.)

(3)(a) At the hearing resulting from subsection (1) or (2) of this section, the committed person shall be entitled to be present and to the benefit of all constitutional protections that were afforded to the person at the initial commitment proceeding.

Rude contends the emphasized language in subsection (2)(d) prohibits a court from considering "an offender's participation and progress in treatment" at trial on a first

petition for a LRA. Brief of Appellant at 20. This contention is flawed in several respects.

First, the location and last sentence of subsection (d) indicate that the emphasized language applies to the show cause hearing, not the LRA trial, and that it merely allows a court to grant a trial without the normal showing that the committed person's condition has changed. Second, even if the language applies to the LRA trial, it does not limit the court's inquiry in the manner Rude suggests. Prohibiting a court from considering whether a person's "condition has 'so changed'" only precludes considering whether there has been "a substantial change in the person's physical or mental condition." RCW 71.09.090(4)(a). It does not prohibit a court from considering treatment-related behaviors bearing on that person's suitability for a LRA, including the person's attitude toward, or behavior in, treatment. [7]

This reading of the statute is consistent with, and supported by, a related provision that precludes release to an LRA unless the court finds "the person is willing to comply with the treatment provider and all requirements imposed by the treatment provider and by the court . . . ." RCW 71.09.092(4). It is also consistent with the

---

[7] We note that our State Supreme Court deferred to a similar view of the LRA statutes advanced by the State in In re Detention of Thorell 149 Wn.2d 724, 752-753, 72 P.3d 708 (2003) (emphasis added):

> The State emphasizes . . . that the time for LRA evaluation must be spent in intensive inpatient treatment, which occurs only after commitment. . . . Successful treatment and evaluation for LRAs . . . depends on openly discussing and understanding one's past violent sexual behavior and the desire to commit acts of sexual violence in the future. The State argues that it is only after commitment that SVPs tend to participate in treatment fully and the appropriateness of LRAs can accurately be evaluated.
> Given the deference we must afford the legislative classification, in this case, we conclude that the State's reasons for delaying consideration of LRA's [until the committed person's first annual review] are rationally related to the treatment of sexually violent predators.

statutory requirement that an LRA be in the SVP's "best interest." RCW 71.09.090(3)(d).

As we noted in In re Detention of Bergen,[8]

> . . . the "best interests" standard accounts for the inherent dangerousness of SVPs and their unique, extended treatment needs: it relates to the SVP's successful treatment, ensuring that the LRA does not remove "incentive for successful treatment participation" or "distract[ ] committed persons from fully engaging in sex offender treatment" and is the "appropriate next step in the person's treatment." . . . The "best interests" standard is directly related to the SVP's dangerousness and mental illness and is narrowly tailored to serve the State's compelling interest in appropriately treating dangerous sex offenders.

In short, Rude's interpretation of the statute is contrary to its plain meaning. The trial court did not err in considering Rude's attitude toward treatment.

Rude next contends the court's findings regarding his attitude toward treatment are not supported by sufficient evidence.[9] We review findings in SVP proceedings for substantial evidence to support the findings beyond a reasonable doubt.[10] We view the evidence in a light most favorable to the State and defer to the trier of fact on matters involving the persuasiveness and credibility of the evidence.[11]

Rude claims the court's findings ignore the fact that he has long sought one-on-one treatment and has sound reasons for not wanting to participate in group therapy. He also claims there is no evidence supporting the court's implicit assumption that group therapy is a better treatment modality than one-on-one treatment. The challenged findings are supported by substantial evidence.

---

[8] 146 Wn. App. 515, 529, 195 P.3d 529 (2008) (quoting Laws of 2005, ch. 344, § 1).

[9] These include Findings of Fact 9, 11, 12, 15, 17, 19, and 20.

[10] In re Detention of Halgren, 156 Wn.2d 795, 811, 132 P.3d 714 (2006); Thorell, 149 Wn.2d at 744.

[11] See In re Detention of Broten, 130 Wn. App. 326, 334-35, 122 P.3d 942 (2005); Thorell, 149 Wn.2d at 744.

8

The evidence before the trial court included the commitment trial testimony of Shandra Carter, a mental health supervisor at the Airway Heights Correction Center. She testified that "[g]roups are primary for [sex offender] treatment" that treatment is provided "based on what research says works [.]" CP at 585. Carter and Michael Jacobsen, Rude's prison treatment providers, both testified to his treatment interfering behaviors. In an unchallenged finding, the court below found the following occurred during Rude's pre-commitment treatment with Jacobsen:

> Mr. Rude was hesitant to discuss details of his sexual offending history, and the complete nature of his sexual criminal history is in serious question. Mr. Rude's resistance to treatment continued to a substantial degree throughout treatment. Mr. Rude was not transparent with his treatment providers, which would have helped them discover his risks and negative behavior patterns and create successful intervention strategies. Mr. Rude was unwilling to divulge the full nature of his risks, vulnerabilities, and triggers. Mr Rude appeared to manipulate and disclose information in such a way as to make him appear less of a risk to the community. . . . Mr. Rude lacked understanding of his specific offending patterns, risks, vulnerabilities, triggers, and intervention strategies.[12]

This pattern of behavior continued during Rude's subsequent commitment at the Special Commitment Center (SCC). During a discussion concerning his treatment plan, Rude disagreed with his diagnoses, dynamic risks, interventions, and history. He showed "notable rigidity" and an unwillingness to accept critical feedback. CP at 255. Despite being repeatedly informed that group therapy was the primary treatment modality and that "individual session modality is seen as less effective because of the likelihood of [the] therapist being manipulated and [the] absence of peer feedback," Rude insisted on receiving one-on-one treatment and eschewed the available treatment

---

[12] Finding of Fact 10. CP at 798.

options. CP at 262. The credibility and persuasiveness of this evidence, which supports the challenged findings, was for the trial court.[13]

Finally, Rude contends the court's findings do not support its conclusions that the proposed LRA is not in his best interest and does not include conditions that would adequately protect the community.[14] As discussed above, however, the "best interest" requirement is focused on treatment and whether a LRA is the appropriate next step in a person's treatment. The trial court's findings, particularly those concerning Rude's attitude toward treatment, amply support its conclusion that a LRA is not in his best interest.[15] Because that conclusion justifies the court's denial of Rude's proposed LRA, we need not consider Rude's challenge to the court's conclusion that his LRA lacked conditions that would adequately protect the community.

Affirmed.

_Trickey, J._                    _Spearman, C.J._

---

[13] In re Broten, 130 Wn. App. at 334-35. Rude points to studies that he claims undermine Carter's testimony about the superiority of group therapy. But these studies were apparently not presented to the trial court. Moreover, they involved child molesters, not SVP's, and were evidently inconclusive as to whether treatment outcomes differed between individual and group therapy. The trial court was entitled to rely on the stipulated evidence concerning group therapy, and the credibility and persuasiveness of that evidence are beyond the scope of our review.

[14] Conclusion of Law 3. CP at 800-01.

[15] In a footnote, Rude challenges Finding of Fact 11, arguing that the court improperly drew a negative inference from his refusal, on the advice of counsel, to participate in the annual review conducted by Dr. Marquez. We need not address arguments raised in footnotes. State v. Johnson, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993). Furthermore, Finding of Fact 11 addresses Rude's failure to disclose his sexual offense history to his community based treatment provider prior to his release from prison, not his failure to participate in his annual review.